27 C.C.P.A. (Patents)

**BELDEN et al. v. KLINGELE.**
Patent Appeal No. 4295.

Court of Customs and Patent Appeals.
June 24, 1940.

George Crompton, Jr., of Worcester, Mass. (Paul A. Blair and J. Harold Kilcoyne, both of Washington, D. C., of counsel), for appellant.

Mason & Porter, of Washington, D. C. (Eugene G. Mason, of Washington, D. C., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal in an interference proceeding wherein the Board of Appeals of the United States Patent Office affirmed the decision of the Examiner of Interferences awarding priority to the party Klingele upon a single count (the only count involved) which reads: "1. A cam grinding machine comprising a base, a rotatable grinding wheel, a transversely movable wheel slide to support said wheel, a longitudinally movable work table on said base, means to rotatably support a camshaft having a plurality of spaced cams thereon, means to rotate said camshaft, means to intermittently traverse said table in one direction to bring successive cams into position opposite the grinding wheel, means to automatically feed the wheel toward and from the camshaft to grind said cams, and means for automatically truing the grinding wheel after all of said cams have been ground."

The interference was declared between a patent, No. 2,022,178, issued to Belden and Silven November 26, 1935, upon an application filed April 16, 1932, and an application of Klingele filed August 14, 1936, for the reissue of a patent, No. 2,014,768, granted him September 17, 1935, upon an application filed February 24, 1930. The count is identical with claim 19 of the Belden and Silven patent. It appears that it was suggested to Klingele by the Primary Examiner for interference purposes a few weeks after the reissue application was filed, the Primary Examiner having found that certain claims of the reissue application were unpatentable over it and other of appellants' claims, and holding it necessary to determine "who is the first inventor of the subject matter thereof." The suggestion was adopted by Klingele and the claim was copied into his reissue application where it became claim No. 57.

It may be stated at this point that the broad title of the Belden and Silven patent is "Hydraulically Operated Automatic Cam Grinding Machine," and that of Klingele's reissue application (the same as that of his patent) is "Automatic Multiple Crank-Pin Grinding Machine." It is noted that the introductory clause of the count reads, "A cam grinding machine" and that the words "cam" and "camshaft" later appear therein at different places. In his letter suggesting the claim for interference the Primary Examiner, citing authorities, stated, "While claim 19 of the patent [Belden et al.] refers to the fact that the machine is for grinding

a cam shaft this is not material to the machine structure."

By the reasons of appeal presented in the notice of appeal to us, appellants seek to have two general issues determined; first, the right of appellee to make the count; second, the question of priority upon the facts.

With respect to the first of these issues, the question of whether it is properly before us arises. The board held, for reasons which are stated later, that the question was not before it and did not pass upon it and its action in that regard is assigned as error.

The issue was raised by motion to dissolve brought before the Primary Examiner, who denied it. In view of the controversy concerning it we quote the following from the brief on behalf of appellants:

"Following the practice clearly endorsed in this court in Morgan v. Drake and Hubbell, 36 F.2d 511, 17 C.C.P.A. 729, Belden and Silven moved to dissolve this interference, stating the following grounds:

"'Ground I—That there has been such informality in declaring this interference as will preclude the proper determination of the question of priority of invention, and

"'Ground II—That the party Klingele has no right to make the claim constituting the single count of the issue, which is claim 57 of Klingele's application.'

"Under Ground 1, Belden and Silven particularized as follows:

"'There is no statutory authority to grant a reissue of the Klingele patent No. 2,014,768 in view of the facts of this case.

"'Part 1—The single count of the interference, and likewise claims 53, 54, 55, 56 and 58 of Klingele's reissue application, are not for the same invention as the original Letters patent No. 2,014,768.

"'Part 2—There was no inadvertence, accident or mistake within R.S. 4916 which would justify the Commissioner in reissuing patent No. 2,014,768.

"'Part 3—The reissue oath filed by Klingele is wholly inadequate to support the reissue application by reason of failure to show any error arisen by inadvertence, accident or mistake.'

"Under Ground II, Belden and Silven particularized as follows:

"'The party Klingele has no right to make the claim constituting the single count of the issue.'

"Repetition of Part 1, Part 2 and Part 3."

It will be observed that neither in grounds nor in the particularizations is there any allegation that Klingele did not disclose the subject matter of the count in the application upon which his patent was granted. It is alleged that the count is not for the same invention as the original letters patent, but there is no allegation that the application for the patent or the patent itself does not support the count.

As we interpret the decision of the Primary Examiner he construed the motion as not raising any question of lack of disclosure in Klingele's original application or patent; that is, as not raising the question of the latter's right to make the count broadly, but as being limited to his right to have the claim in a reissue and, upon this basis, held adversely to appellants' contention.

It seems that appellants sought to raise the question broadly before the Examiner of Interferences. In his decision it is said:

"The junior party raises the question of the right of the senior party to make the count in issue. During the motion period a motion was brought to dissolve on the ground that the count in interference is not drawn to the same invention as originally allowed to Klingele in patent 2,014,768 of which his present application is a reissue; that there was no inadvertence or mistake to justify reissuing the patent; and that the oath is inadequate. The junior party urges that these grounds are broadly directed to Klingele's right to make the count and under rule 130 this question may be reinvestigated at final hearing.

"The position taken by the junior party is not believed to be well founded because the ground now urged is not believed to be the same as that originally urged and only the ground originally urged can now be reinvestigated. Furthermore, even assuming that there is some basis in the original motion to support the present ground there is not sufficient evidence to justify a ruling on this question contrary to that arrived at by the primary examiner."

The board in its decision said: "Taking up first the party Belden and Silven's contention that the party Klingele cannot make the count. The situation here is most unusual but we believe it is clear that the motion to dissolve made by the party Belden and Silven was regarded by the Primary Examiner as not raising any question as to whether the Klingele original dis-

closure would support a count defining common patentable subject matter but rather whether the party Klingele was entitled to have such a claim allowed in a reissue application. The Primary Examiner denied the motion but he considered the entire situation from the reissue standpoint. As we read the motion to dissolve and the brief which was filed before the Primary Examiner relating thereto, we think that the examiner was justified in considering it in the manner that he did. If appellants had desired to include in their motion any objection to the sufficiency of the original Klingele disclosure, we think that they should have clearly presented this view to the Primary Examiner and insisted that he render a decision upon it. Inasmuch as they failed to do this, we consider that this question is not properly before us. The question as to a party's right to a reissue, while it may be considered upon appeal from an adverse interlocutory decision, cannot be argued on a priority appeal as this question is an ex parte one and the Courts have frequently held that it will not be considered in priority cases."

It is urged on behalf of appellants that the foregoing holding of the board is in conflict with the decision of this court affirming a decision of the Board of Appeals in the case of Myles Morgan v. Alden M. Drake and Ray D. Hubbell and Prentice Conradson, 36 F.2d 511, 17 C.C.P.A., Patents, 729.

In the brief for appellants it is said that "Present counsel was junior counsel in Morgan v. Drake and Hubbell," supra, and that, "In drawing the motion to dissolve, Belden and Silven's counsel relied upon the decision of the Board of Appeals and of this Court," in that case. An examination of the motion to dissolve in that case (it is not literally quoted in our decision but the decision clearly shows that the question was raised broadly) discloses that the motion in the present case, so far as it goes, is quite similar to the motion there made, but that motion went further and alleged: "* * * that said [reissue] application is replete with new matter, *neither shown, described, nor suggested in the original* Morgan Letters Patent No. 1,535,331 * * * Morgan's [reissue] Claims 4 to 7 inclusive corresponding to Counts 1 to 4 inclusive of said interference, are at *variance with and wholly unsupported by the specifications and drawings of said original Morgan patent* * * *." (Italics ours.)

Nothing similar to the matter last quoted appears in the motion to dissolve in the instant case. If anything of the kind had been expressed here we would have a different situation before us.

The decisions of the tribunals of the Patent Office in this case do not conflict with our ruling sustaining the board's decision in that case. We are of the opinion that the board correctly construed appellants' motion here as being limited to the right of Klingele to obtain the claim which forms the count in a reissue patent, and that this is a question to be considered ex parte. Hence, the board properly dismissed the motion.

It might be pointed out, in view of the emphasis which counsel for appellants have placed upon the Morgan v. Drake & Hubbell & Conradson case, supra, that Morgan inserted numerous drawings not included in his original patent into his reissue application and added extensive matter explanatory of such drawings to his specification. Nothing of that nature occurred here. The decision of the Primary Examiner on the motion to dissolve states: "Klingele has not found it necessary to introduce any new descriptive matter in his specification to support the claim that forms the count of this interference and the decision [Corbin Cabinet Lock Co. v. Eagle Lock Co., 150 U.S. 38, 14 S.Ct. 28, 37 L.Ed. 989, cited by appellants] does not seem to deny Klingele's right to prosecute the claim in his reissue application under the circumstances of this case."

We agree with the tribunals of the Patent Office that the grounds alleged as a basis for dissolution relating to lack of a proper showing of inadvertence, accident, or mistake, and to the insufficiency of Klingele's oath to the reissue application are not well taken. We agree also with the holding to the effect that the fact that appellants' device is described as one for grinding camshafts, while that of Klingele is described as one for grinding crankpins, is not material in view of the description of structure given in the count.

The second general issue is that of priority on the facts. The record is quite voluminous as are the briefs on behalf of the respective parties, but, reduced to its final analysis, the real question before us is comparatively simple. It will be observed that the last element of the count is "means for automatically truing the grind-

ing wheel after all of said cams have been ground."

As we understand it, "truing the grinding wheel" means smoothing its surface to remove irregularities caused by its contacts with the surfaces which it grinds, and the instrument used for truing is a diamond.

We further understand that during the operation of the grinding wheel upon the parts being ground by it, the wheel oscillates (or reciprocates) and that such oscillation (or reciprocation) continues while the truing of the wheel takes place after all the parts have been ground, unless means be provided to prevent such action, and the count requires that the means for preventing this act automatically.

Both the Examiner of Interferences and the board decided the question of priority solely upon the element, or feature, above quoted. In describing the invention the former said:

"The subject matter of the invention comprises a means for automatically grinding the cam faces of a camshaft, the crank pins of a crank shaft or other similar parts, and after the grinding of a series of such spaced surfaces to automatically true the grinding surface of the grinding or abrading wheel in readiness for another grinding operation. The machine disclosed by the junior party is especially designed and adapted for the grinding of camshafts, while that disclosed by the senior party has for its purpose the grinding of crank shafts. In general these operations are similar except that it is now fairly common to oscillate the grinding wheel during the grinding operation while working camshafts. This oscillation is not possible or at least not practical in the making of crank shafts.

"Where provision is made for such movement of the grinding wheel, means is required to render it inoperative during the truing operation. Machines of the type disclosed by the parties were known in the art at the time their inventions were made. These machines however did not have provisions for automatically truing the wheel, this operation being performed under manual control. *The essence of the invention therefore resides in the provision of wholly automatic means to accomplish this operation."* (Italics ours.)

In their preliminary statement appellants claimed June 1928 for conception and disclosure to others, the beginning of diligence

in May 1929, first drawing in June 1929, and reduction to practice in December 1929, but in the brief before us it is said: "* * * in order to reduce the issues, we voluntarily declare that we no longer will contend that Belden and Silven had a conception of the invention in June of 1928. * * * So in this appeal we will contend for July 1929 for conception of the invention with diligence culminating in reduction to practice in December 1929, at the latest in January 1930 * * *."

At the time the case was before the Examiner of Interferences (and at the time it was before the board) appellants were contending for a date of conception as of June 1928. This contention was denied by the Examiner of Interferences but he found that between June 1928 and July 1929, appellants made layout drawings which disclosed a camshaft grinder that was built and operated in the early part of January 1930. This was not questioned by appellee —indeed, as we understand it, this was conceded by appellee below, and this concession is dwelt upon in the brief on behalf of appellants who quote from appellee's brief said to have been filed below.

The difficulty for appellants, in the view of the Examiner of Interferences, was that the machine so made in conformity with the drawings, and operated in January 1930 did not embrace the limitation above quoted. He tersely expressed it thus: "The machine disclosed by the drawings and operated in January 1930 admittedly had no means to automatically stop the oscillation of the grinding wheel. A lever, manually operated, controlled the operation of the wheel operating assembly."

An examination of the so-called concession made by appellee below discloses that it went no further than to concede what the Examiner of Interferences found. The part of appellee's brief below which is quoted in the brief of appellants before us makes no concession that either the drawings of appellants or the machine made in conformity therewith embraced "means for automatically truing the grinding wheel after all of said cams have been ground."

The board did not question the finding of the Examiner of Interferences with respect to a machine conforming to the drawings having been produced and operated as early as January 1930. It stated: "We consider that the record may be accepted as showing that the January, 1930, machine was capable of fully automatic operation

810

*when the reciprocating mechanism was not employed."* (Italics ours.)

The showing of the record with respect to this was discussed by both the Examiner of Interferences and the board, and their findings and conclusions based on such findings are in entire harmony. The board said: "As far as we have discovered, however, the only witness who has testified with respect to such an operation [operation when the reciprocating mechanism was not employed] is the engineer. Cole. In the concluding portion of Q. 32, this witness was asked:

"* * * what the action was as to dressing the wheel at that time?"

"The answer was to the effect that it was possible to *grind good cams* with or without the wheel reciprocating mechanism and that they operated the machine both ways. The answer, however, *fails to refer to the dressing of the wheel.* Of course, the party Belden and Silven will argue that inasmuch as the January, 1930, machine was provided with automatic means for dressing the wheel after the grinding was completed, the witness Cole intended to indicate that when the wheel reciprocating mechanism was not employed, the grinding of the cams and the truing of the wheel was fully automatic." (Italics ours.)

It may be said that the argument predicted by the board was made before us on behalf of Belden and Silven. Also, as we understand parts of their brief, they adhere to a theory submitted before the tribunals below, expressed in the decision of the Examiner of Interferences as follows: "The inventors testify that oscillation of the wheel is not necessary though it may be desirable. They explain that if the machine were operated to grind cams without the oscillating movement of the grinding wheel then it would be fully automatic in its operation."

The board said of this: "It is urged by the party Belden and Silven that the means for causing reciprocation of the grinding wheel during the grinding of the cams was in the nature of a refinement and that it was not necessary to employ it in order to successfully grind cams."

The Examiner of Interferences pointed out with respect to this contention that the inventors failed to prove that it was ever contemplated by them that their machine was to be operated without the oscillating movement of the grinding wheel and that

they did not testify to an actual test of the machine so operating.

Referring to the argument which the board predicted would be made (and which we assume was, in fact, made before it), that tribunal said:

"In considering this question it should be remembered that the record shows that the party Belden and Silven were desirous of producing a fully automatic machine, including means for reciprocating the grinding wheel, and that after the January, 1930, machine was tested, they developed a means for automatically starting and stopping the wheel reciprocating mechanism. In their application automatic control of the wheel reciprocating mechanism is shown. We find nothing that indicates that they intended to develop a complete machine without the automatic control of the wheel reciprocating mechanism. We think that their actions show that they did not regard as satisfactory a machine in which the reciprocating mechanism was omitted or in which' the starting and stopping of it were manually controlled.

"As against this showing we have only the incomplete and somewhat evasive statement of the witness Cole. He does not refer to any specific instances or dates when the machine was used without throwing the wheel reciprocating mechanism into operation nor, as above pointed out, does he mention the truing of the wheel.

"Taking all the circumstances into consideration, we believe that the Examiner of Interferences was justified in holding that the party Belden and Silven had failed to establish by a preponderance of evidence a satisfactory test of an automatic machine such as called for in the count."

The extensive and, we may add, interesting brief on behalf of appellants has received our careful examination in connection with the record. We deem it not improper to say that much of the brief seems to us not entirely relevant to the only issue upon which the case was decided below, and that parts of it tend to confusion rather than clarification. To state and discuss the arguments in detail would unnecessarily lengthen this opinion.

We think the limitation in the claim was properly construed below; that it is a material limitation; that it cannot be disregarded in an interference proceeding, and that the burden rested upon appellants as junior parties to establish prior conception

811

and reduction to practice, or at least prior conception with diligence during the critical period, by a preponderance of evidence.

We are not convinced that there was error in the holding below that conception was not established as of July 1929 by the drawings exhibited, and are of the opinion that both conception and reduction to practice are dependent upon the showing made by the machine which was operated in January 1930. This was prior to the filing date of Klingele.

So far as reduction to practice at any time prior to Klingele's filing date is concerned, we find nothing of record to support it unless such can be held to be established by the testimony of the witness Cole. We have not overlooked the testimony of the inventors themselves, and the argument of counsel concerning this has been fully weighed, but we cannot hold that testimony sufficient to establish the essential facts.

The testimony of Cole quoted in the brief of appellants, which is claimed to establish reduction to practice, was elicited by a somewhat leading question (which, however, was not objected to), the question and answer reading: "Q. 32. Do you remember how the machine operated in January 1930, whether you ground camshafts with the wheel spindle reciprocating mechanism so that the wheel spindle did not reciprocate or with the wheel spindle reciprocating, and what the action was as to *dressing the wheel at that time?* A. We operated this machine both with and without wheel spindle reciprocation. We found that it was possible to grind good cams either way although from our experience as grinding engineers and from our experience with this machine we realized that it would probably be better if we used the reciprocating attachment. However, satisfactory cams were ground with the machine operated both ways." (Italics ours.)

It will be observed that, as the board said, the answer did not respond to the latter part of the question relating to the action as to the dressing of the wheel. The board referred to the answer as an "incomplete and somewhat evasive statement." Whatever may be said about the question of evasiveness, the answer certainly was incomplete, and, unhappily for appellants, it failed to give any information upon what turned out to be the crucial point of the case. Appellants argue that Cole's "categorical testimony should not be disbelieved." We do not disbelieve it, but we are not at liberty to supply vital matter which he omitted. We accept as true the statement that "it was found possible to grind good cams" when operating the machine with or without wheel spindle reciprocation, but that is not involved in the last feature of the count.

We have considered whether appellants may be entitled to an award of conception as of December 1929, or January 1930, by the completion and operation of the machine, with diligence during the crucial period thereafter. We find nothing in the record which would justify a holding as to that different from the concurring conclusions of the tribunals of the Patent Office.

Appellants argue before us that the burden rested upon Klingele, in view of the fact that his reissue application was filed after appellants' patent issued, to prove his case beyond a reasonable doubt, citing our decision in the case of Wiley v. Mears and Hynes, 75 F.2d 510, 22 C.C.P.A., Patents, 986. We find nothing in appellants' reasons of appeal specific to this contention and their brief very frankly states that it was not raised below. It is assumed that the contention rests upon the theory that Klingele's original application or patent failed to disclose the invention, a question not before us, as has been held. Upon the facts here, the contention is untenable and the case cited in its support has no application. It is not found necessary to consider the evidence introduced on behalf of Klingele since he is entitled to an award of priority on the basis of the filing date of his original application, February 24, 1930.

After the record filed with the clerk of this court had been printed, appellee filed an application for writ of certiorari to have included, as a part of the record, copies of certain papers relating to his reissue application, alleging that same were material to the proper consideration of the case. We find that the papers were proper and essential to be included and that there was an improper diminution of the record by this omission. So, the appellants will be taxed with the costs incident to making them a part of the record in the case.

The decision of the Board of Appeals is affirmed.

Affirmed.