27 C.C.P.A.(Patents)

## TE PAS et al. v. GELDHOF.

## McCABE et al. v. SCHEELE.
## SAME v. GELDHOF.

Patent Appeals Nos. 4336–4338.

Court of Customs and Patent Appeals.
June 24, 1940.

Donald W. Farrington, of Cleveland, Ohio, and Watts T. Estabrook, of Washington, D. C., for appellants.

Theodore E. Simonton, of Syracuse, N. Y., for appellees.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

These appeals bring before us for review separate decisions by the Board of Appeals of the United States Patent Office in three interferences. The records in the three interference proceedings have here been consolidated and the cases were briefed and argued together.

The first interference, No. 70,723, hereinafter referred to as "interference No. 1," is between an application of Edmund J. TePas, Lelio A. Bottinelli and John J. McCabe, No. 661,002, filed March 16, 1933, and an application of Peter Eduard Geldhof, No. 662,511, filed March 24, 1933.

The second interference, No. 73,740, referred to hereinafter as "interference No. 2," is between an application of John J. McCabe and Walter G. Brittain, No. 661,022, filed March 16, 1933, and an application of Charles C. Scheele, No. 675,733, filed June 14, 1933, for the reissue of patent No. 1,887,734, granted November 15, 1932, on an application filed August 15, 1930.

The third interference, No. 73,741, hereinafter referred to as "interference No. 3," is between the aforesaid application of McCabe and Brittain, No. 661,022, and the application of Geldhof, No. 662,511, hereinbefore referred to.

The applications of the appellants in all three interferences are owned by the Apex Electrical Manufacturing Company of Cleveland, Ohio, hereinafter called "Apex," while the applications of the appellees Geldhof and Scheele are owned by the Easy Washing Machine Corporation of Syracuse, New York, hereinafter called "Easy."

The inventions defined in the counts of all three interferences are closely related and pertain to so-called table top ironing machine cabinets. Easy and Apex are competitors in manufacturing and selling this particular kind of ironing cabinet.

In order to understand the particular issues involved, it is regarded as important to understand something about the problems each of the parties were attempting to solve when they entered the field. Both parties have called attention to the fact that C. F. Anderson et al., on January 17, 1928, were granted a patent on an ironing machine which, aside from having the customary legs, rollers, hot shoe, etc., was equipped with a cover, which, when the ironer was not in use, would furnish a flat top to act as a table and which might be, through a pivoted connection, pushed backward and away from the ironing equipment when it was desirable to operate the ironer. The Anderson patent was prior art to both parties and broadly it was old to construct a table top ironing cabinet which with a pivoted connection, would swing away from the ironing unit, and it was desired by both parties to avoid the infringement of the Anderson patent which was owned by a competing concern referred to as the Conlon Corporation.

TePas, Bottinelli and McCabe, in their application involved in interference No. 1, emphasized the importance of a structure in which the cover was pivoted to the cabinet structure and was so made that when the cover was pivoted away from the cover of the ironing fixture and in an open position, one of the side walls of the cover could be conveniently used as a shelf for articles that were ironed. In order to make this feature effective, it was stated that the cover, when pivoted back, would be at a lower open position than the top of the cover would be when closed. It seems that this was the essential feature of the TePas et al. application.

The McCabe and Brittain structure of interferences Nos. 2 and 3 generally is quite similar to the kind of structure heretofore described, and in view of the nature of the issues hereinafter discussed and decided, it is not necessary to here, in fur-

ther detail, describe the structure disclosed in their application.

The Geldhof application describes a flat top ironing machine cabinet in which the top, when being utilized as a cover for the machinery, may also act as a table, and can, with the aid of springs, be lowered manually below the ironing elements so as to accomplish three purposes other than those here previously stated—to permit easy access to the ironing elements, to prevent the heat being reflected from the ironing elements to the operator's face, and to lower the center of gravity of the whole structure so as to make it more stable.

The Scheele patent involved in Scheele's reissue application with which we are here concerned relates to a so-called drop head type of ironing machine which simulates in many respects the drop head mechanism of certain sewing machines. It is so constructed that the raising of the cover raises and lowers the ironing structure. The reissue application was filed in June 1933 and contains claims which define the invention described in the application of McCabe and Brittain.

For reasons which will be obvious later, we think it proper to separately treat each of the interferences in the order of 1, 3 and 2.

### Interference No. 1, TePas, Bottinelli and McCabe v. Geldhof.

This appeal when brought here involved 16 counts. In 15 of them there was a limitation relating to a spring and by reason of this fact appellants in this court concede priority of invention to the appellee Geldhof in all the counts except count 4 which reads as follows: "4. In an ironing machine, an ironing stand including supporting legs and a fixed substantially horizontal surface supporting ironing elements which project an appreciable distance above the level of the horizontal surface, a hollow box-like cover supported by the ironing stand and extending over and enclosing the ironing elements and forming with the ironing stand a table, means secured to the ironing stand and to the cover for enabling the cover to be manually moved in a fixed predetermined arc upwardly and over the ironing elements to a substantially vertical position at the rear of the ironing stand in close proximity thereto with the front of the cover forming a substantially horizontal flat surface of substantial width *lying below the top*

*level of the ironing elements."* [Italics ours].

It is the contention of the appellants that for several reasons the board was in error in awarding priority of the involved count to the junior party, appellee. By virtue of concessions of appellants during the argument of the case here, but two reasons of appeal need be considered. They involve contentions that: (1) the invention of the count is not that of Geldhof but that of one Luther Ringer, a machine designer for Easy, Geldhof being chief engineer of Easy during most of the period with which we are here concerned. It is contended by appellants that Geldhof, although he made certain sketches, did not make a working model sketch from which reduction to practice was subsequently had, and that he did not construct the device made from such drawing, and that therefore Ringer and not Geldhof is the inventor of the invention defined in the Geldhof application; (2) the board erred in finding that the so-called "Wonder" ironer, Exhibit 28, of Apex which was depended upon for reduction to practice by TePas, Bottinelli and McCabe did not respond to the counts.

On the first question relating to the invention being that of Ringer rather than that of Geldhof, it is sufficient to say that it is settled law that in an interference of this character a party thereto cannot successfully contend that the invention is not that of his adversary, but that of a third party. If a third party is the first inventor in this case, the appellants are not, and the question as to whether Geldhof is to have issued to him a patent after the termination of this interference is a matter for ex parte consideration in the Patent Office. Cooper v. Hubbell, 53 F.2d 1072, 19 C.C.P.A., Patents, 790; Derby et al. v. Whitworth, 62 F.2d 368, 20 C.C.P.A., Patents, 791; Hoza v. Colby, 97 F.2d 89, 25 C.C.P.A., Patents, 1206.

Geldhof was by the tribunals awarded a date of conception of the invention defined by count 4 and other counts not here involved of as early as November 7, 1932, and it was by them held that he reduced the same to practice by the end of November of that year and certainly no later than December 22, 1932. The appellants do not question the fact that the invention was reduced to practice on this date but contend that Geldhof is not entitled to the benefit thereof as has been stated

hereinbefore. This date is prior to any date that could be awarded upon the instant record to the appellants unless it were held that appellants' Exhibit 28 responded to the terms of the count.

Exhibit 28, a machine called the "wonder" ironer, relied upon by appellants as evidence of reduction to practice, was made by the end of May 1929, and appellants contend that it responds to all the terms of said count 4. It was the view of both tribunals below that the limitation in the count relating to the front of the cover "lying below the top level of the ironing elements" was not met by Exhibit 28. In this exhibit, which is of the table top variety, the top pivots away from and behind the ironing elements. The front side of the top structure, when the top is pivoted backward, is considerably above rather than "below" the top level of the ironing elements. The portion that forms the back of the so-called box-like structure is a fixed panel which when the cover is pivoted backwards remains perpendicular and near to and above the ironing elements. Since the cover and panel are of metal and a substantial portion of the same is located above and near to the heated ironing element, it seems clear that the heat from the ironing shoe would necessarily be reflected into the face of the operator and that the stability of the machine would not be the same as it would be if the top of the cover were below the top of the ironing element.

■■ We think that the limitation, in view of the invention involved in the count, which is a claim regarded as patentable by the Patent Office, is not met by Exhibit 28, and that the limitation is a material and important one. It is well settled that limitations in interference counts may not be ignored. It is the contention of appellants that with mechanical skill a longer slot could have been made in the links of the pivoting mechanism which would have permitted a lowering of the top so that it would definitely be below the top level of the ironing elements and that it was not necessary that the initial construction of this device should be mechanically perfect but that it essentially embodied the idea of the invention. Downs v. Andrews, 58 App.D.C. 91, 25 F.2d 218, is relied upon. It may be true that an invention does not have to be mechanically perfect or so constructed as to be commercially successful in order to embody the invention defined in a count, but we know of no law that supports the contention of appellants that a party to an interference whose structure does not respond to a limitation in a count can successfully contend that he should be permitted to make the count upon the theory that mechanical skill alone could change the structure so as to conform to the count.

In arguing that this court should ignore the limitation which requires that the front of the cover when opened shall lie below the top level of the ironing elements, appellants rely on Robins v. Wettlaufer, 81 F.2d 882, 23 C.C.P.A., Patents, 952, where a count relating to a screening apparatus calling for a drive shaft "substantially coincident with the center of gravity" of the frame, and another count calling for the drive shaft to be "close to the center of gravity" of the frame, were held to be met by a structure where the center of gravity was 7⅒ inches away from the center of gravity of the gyrated mass. For reasons not applicable to the facts in this case, and which need not be discussed here, it was held that the limitation in the counts had been met. An entirely different situation prevails here from that which prevailed in the above-referred-to case. There it was only necessary for the drive shaft to be "close to" or "substantially coincident with" the center of gravity. Here is a definite limitation that the front of the cover must be below the top of the ironing elements. If it is not below the top of the ironing elements, two of the useful purposes of the invention, to wit, avoiding the reflection of the heat into the face of the operator and adding to the stability of the machine have not been accomplished.

■ It therefore follows that Exhibit 28 may not be regarded as evidence either of conception or reduction to practice. While certain drawings made by appellants at a date prior to any date awarded appellee for either conception or reduction to practice were introduced in evidence and illustrate modifications of Exhibit 28, there is no evidence that the structures represented in the drawings were ever actually reduced to practice and there is no contention here that there was any diligence on appellants' part during the critical period.

As was pointed out by the Examiner of Interferences, all activities of appellants bearing any relation to the issue of the count, other than those relating to Exhibit

28, occurred on dates subsequent to Geldhof's reduction to practice and therefore need no consideration here.

█ Under the circumstances stated, it follows that the junior party Geldhof has shown by a preponderance of the evidence that he was the first inventor of the subject matter defined by the counts of this interference and that the Board of Appeals was without error in affirming the decision of the Examiner of Interferences in awarding priority of invention defined in the counts to Geldhof. The decision of the Board of Appeals is affirmed.

### Interference No. 3, McCabe and Brittain v. Geldhof.

This interference involves the same application of Geldhof, filed March 24, 1933, which was involved in interference No. 1 and an application of McCabe and Brittain which was filed on March 16, 1933, the same date as the application filed in interference No. 1 by TePas, Bottinelli and McCabe. As was true in interference No. 1, it will be noticed that McCabe and Brittain are the senior party by eight days. There are three counts in this interference numbered 1, 2 and 3. Count 1 is illustrative and follows: "1. In an ironing machine, an ironing stand supporting ironing elements which project an appreciable distance above the level of the stand, a hollow box-like cover supported by the ironing stand and extending over and enclosing the ironing elements and forming with the ironing stand a table, means secured to the ironing stand and to the cover for enabling the cover to be manually moved in a fixed predetermined arc upwardly and over the ironing elements to a substantially vertical position at the rear of the ironing stand in close proximity thereto with the front of the cover forming a substantially horizontal *flat surface of substantial width lying below the top level of the ironing elements.*" [Italics ours.]

There are three principal questions submitted but only one of them requires consideration here. The first question relates to whether or not Exhibit 28, which is the Apex "Wonder" ironer referred to in interference No. 1 and there relied upon for reduction to practice, is available for consideration as a reduction to practice in this interference. The question is brought about by contentions with respect to a stipulation of the parties and the fact that the exhibit could not necessarily be the work of three persons in one interference and the work of two persons in another. We think, however, that it is not necessary for us to determine this question in view of our conclusion on the second question presented which is: Does said Exhibit 28 respond to the limitations in each of the counts with respect to the horizontal flat surface of the cover lying below the top level of the ironing elements? Counts 2 and 3 specify that the cover shall lie *"well* below the top level of the ironing elements." [Italics ours.]

The third question raised is one decided, adversely to the contentions of appellants, in the previous interference, relating to Geldhof not being the real inventor, since it is contended that a third party was the inventor of the structure defined by the counts.

For reasons assigned in interference No. 1 it must be here held that Exhibit 28 does not meet the said limitations in the counts and that appellants cannot successfully contend that Geldhof is not the inventor of the counts but that another is such inventor.

██ Appellants also state that either the Geldhof or the Scheele patent if issued would be invalid because of double patenting, if the claims they now assert were allowed. This is not a matter of concern here, but is a matter for ex parte consideration in the Patent Office. Other questions raised in this interference have been decided adversely to appellants in interference No. 1 and need no further attention here. We conclude that the board committed no error in affirming the decision of the Examiner of Interferences in awarding priority of invention defined by the involved counts to the junior party Geldhof, and its decision is affirmed.

### Interference No. 2, McCabe and Brittain v. Scheele

This interference is between the application of McCabe and Brittain, filed March 16, 1933, involved in interference No. 3, and a reissue application of Scheele filed June 14, 1933, the original application which ripened into a patent having been filed August 15, 1930. The invention pertains to an ironing machine cabinet and is closely related to that defined by the counts considered hereinbefore in interferences Nos. 1 and 3. The single count of the interference reads as follows: "An ironing machine comprising cooperable ironing elements, a framework comprising a plurality of legs for supporting the iron-

ing elements, a hollow box-like cover of substantial height resting on the framework with at least part of the ironing elements projecting upward into the confines of the cover, a pair of links pivoted to the cover and to the framework and enabling combined pivotal and bodily manual movement of the cover from a position enclosing the ironing elements through 90° to a position at the rear of the framework such that the lower rear portion of the cover rests against the legs of the framework and *the front portion of the cover lies well below the top level of the ironing elements*." [Italics ours.]

Appellants make several contentions in this case. They first contend as the principal issue that it should be held that the reissue application of Scheele calls for a different invention than that for which he was granted a patent on his original application which was based upon a so-called drop head disclosure and that under the law laid down in Gill v. Wells, 22 Wall. 1, 22 L.Ed. 699, appellee may not now claim in a reissue application that which was invented and commercialized by another. It is to be noted that appellants do not question the right of appellee to make the count. Nowhere is it suggested that the count does not read upon the original Scheele disclosure. The right to reissue, like the right of renewal, is not a question of priority or one ancillary thereto, and under the well-settled law is not a matter for our concern here, but one for ex parte consideration by the Patent Office. Doherty v. Dubbs, 68 F.2d 373, 21 C.C.P.A., Patents, 807.

Appellants make some contention with reference to certain drawings being evidence of conception and proof of certain reduction to practice. Other than that which relates to Exhibit 28, which is the so-called Apex "Wonder" ironer, admittedly constructed in May 1929, there is nothing to show that there was any reduction to practice of the structure of the drawings nor is there any showing of diligence during any part of the critical period. While it is referred to in appellants' brief it was not urged in oral argument that there was any definite showing of diligence. It is asserted here, as it was in the preceding interferences, that said Exhibit 28 is available in this interference under the stipulation and when considered must be held to be a reduction to practice of the in-

vention defined in the count in May 1929 which is earlier than any date available to Scheele.

It will be noticed that the count contains substantially the same limitation as was in the counts of the two interferences heretofore discussed, to wit "the front portion of the cover lies well below the top level of the ironing elements." Regardless of whether or not, under the stipulation, Exhibit 28, the construction of which they alleged and contended enured to the benefit of the three appellants of interference No. 1, is available to the two appellants in the instant interference, it is our view, as explained fully in interference No. 1, that said exhibit does not meet the requirements of the limitation of the count to which attention has been directed. This being true, appellants, the junior party, have not shown that they were the first inventor within the meaning of the law, and we agree with the Board of Appeals in its decision affirming that of the Examiner of Interferences in awarding priority of invention of the issue of the count to the senior party Scheele. The decision of the Board of Appeals is affirmed.

Affirmed.