53 CCPA

**Dalton H. PRITCHARD and Alfred C. Schroeder, Appellants,**

v.

**Bernard D. LOUGHLIN, Appellee.**

**Patent Appeal No. 7567.**

United States Court of Customs and Patent Appeals.

May 19, 1966.

Rehearing Denied July 28, 1966.

William H. Meagher, Princeton, N. J., Roland A. Linger, Washington, D. C. (A. Russinoff, Princeton, N. J., of counsel), for appellants.

Edward A. Ruestow, Little Neck, N. Y. (J. C. Bowyer, Washington, D. C., of counsel), for appellee.

Before RICH, Acting Chief Judge, MARTIN, SMITH and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.*

KIRKPATRICK, Judge.

This appeal is from the decision of the Board of Patent Interferences awarding priority to the appellee Loughlin. The interference involves Pritchard et al. application Serial No. 300,855, July 25, 1952, and Loughlin application Serial No. 619,912, filed November 1, 1956. The Loughlin application is for a reissue of a patent (2,728,813) granted December

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Chief Judge WORLEY, pursuant to provisions of Section 294(d), Title 28, United States Code.

27, 1955, on an application antedating the Pritchard application, which, in turn, was a division of another patent (2,773,-929) granted on a still earlier application, the benefit of the filing date of which the examiner awarded to Loughlin. Thus Loughlin is senior party.

The count relates to color television receivers and reads:

1. In color television receiver apparatus having a tri-color picture reproducing tube, the combination of a monochrome signal source, a first color difference signal source, a second color difference signal source, a first mixer circuit having a plurality of inputs, a second mixer circuit having a plurality of inputs, a third mixer circuit having a plurality of inputs, with said monochrome signal source connected to one of the inputs of each of said mixer circuits, with said first color difference signal source connected to another input of said first mixer circuit, and with the second color difference signal source connected to another input of the third mixer circuit.

The count originated in patent No. 2,-763,716, to Kenneth E. Farr.[1] A brief explanation of the background of the invention, based on that disclosure in particular, is in order.

Information enabling the home receiver to reproduce a picture is sent over the air by means of a complex signal including two components of importance here. One of those signal components, in which the values of the three primary colors, red, blue, and green, in the scene to be reproduced are combined in proportion to their contribution to the total luminance, controls the brightness of the scene rather than its color and is capable of producing the ordinary black and white picture in a black-and-white receiver. The other signal component includes color values of the original scene with the brightness value subtracted

therefrom, called color difference signals. According to the invention, the color difference signals for each of the primary colors are added algebraically to the brightness signal through circuitry in the receiver to produce corresponding color signals. The apparatus of the Loughlin application feeds each of the three resulting signals, red, blue, and green, to a control element of one of three separate television tubes designed to produce the corresponding color, and the three resulting red, blue, and green pictures are optically combined and shown on a single screen as one picture. The Farr patent and Pritchard application utilize a single picture tube having three separate sets of tube elements for controlling red, blue, and green reproducing portions of a single screen and apply the three signals to the appropriate set of elements to display the picture without the use of separate optical elements.

The Farr patent encloses the elements of the three separate tubes in a single envelope. Each of the three colors is fed to its own set of tube elements—cathode, grid, and anode—as though they were three tubes. The picture is then displayed directly on the screen of the tube, avoiding any necessity for optical means to combine three separate pictures.

Farr states that in the prior art the picture was obtained with only the monochrome signal and the three color difference signals, available in the receiver outside the tube. That was done by adding or matrixing the monochrome signal and the appropriate color difference signal in each of the three electron guns of the tube. With the monochrome signal applied to the control grid of each gun, impressing the red color difference signal on the cathode of the red gun resulted in that gun's causing reproduction of the red component of the picture. Similarly, impression of the blue and green color difference signals on the cathodes of the

1. Farr was eliminated from the interference prior to final hearing as a result of his failure to allege any date in his preliminary statement prior to the filing dates of the two parties involved here.

blue and green electron guns, respectively, resulted in causing reproduction of the blue and green components.

The present invention is described as a modification of the above system wherein separate matrixing, external to the picture display tube, is employed in the receiver to provide separate color control signals which may be adjusted independently before being applied to the tube. Farr accomplishes external matrixing through the use of circuitry employing three dual triodes.

Two issues were presented to the Board of Patent Interferences. They are:

1. Whether Loughlin's application had support for the count. The board held that it had.

2. Whether Loughlin was barred from obtaining the count in his reissue application because it is drawn to an invention different from that claimed in the original patent. The board held that this point was not reviewable by it for the reason that the question was not ancillary to priority.

The correctness of the Board's rulings constitutes the issue now before the court.

The question of support for the count in Loughlin's reissue application arises from the fact that, while the application does disclose matrixing means, external to the picture display means, for providing individual color signals in the receiver, it does not disclose their use with a single tri-color tube in a single envelope. Instead, it describes the use of a combination of three separate color tubes, one for supplying each of the red, blue, and green portions of the picture. Each tube comprises a single electron gun and a screen for one of those three colors, and each of the corresponding signals is impressed on the control grid of the appropriate tube. A mirror arrangement is provided for optically combining the red, blue, and green images on the screens of the three tubes to present the complete color image to the observer.

The reasoning of the board in concluding that the Loughlin reissue application and its parent patent disclose the count was:

Here the invention is the provision of a matrixing circuitry external of the picture reproducing device to provide the color representative signals in the ultimate condition desired. It is immaterial to such a system whether the signals are applied to a single three-gun tube or to three separate tubes or to some other image reproducing device. Clearly, the introductory clause does not give life and vitality to the self-contained description of circuitry recited in the body of the count. * * *

Appellants note that the board regarded the invention involved here to lie in the provision of a matrixing circuitry "external of the picture reproducing device" to provide the separate color control signals. They argue that, were it not for the recitation in the count of the "tri-color picture reproducing tube," there would be nothing in the count to distinguish external matrixing from internal matrixing or matrixing within the picture tube which Farr describes as old in the art. Specifically, it is their position that the "mixer circuits" in the body of the count could simply be the electron guns of the picture reproducing means were it not for the previous designation of the receiver apparatus as "having" a picture reproducing tube. They urge:

In other words, "the preamble was considered necessary to give life, meaning and vitality to the claims or counts," Kropa v. Robie et al., 187 F.2d 150, 152, 38 C.C.P.A. 858.

It is clear to us that the board correctly apprehended the scope of the invention here. We agree that it is immaterial to the inventive concept whether the externally matrixed, separate color signals are applied to a single three-gun and three color tube or to three separate tubes. In fact, appellants concede that "external matrixing" can be used either with a tri-color tube or with the trinescope (arrangement of three separate tubes) used by Loughlin. As to appellants' argument that the reference to the tube in the preamble is necessary to avoid

the count applying to prior art constructions in which both monochrome and color difference signals are applied to the picture tube, we are not satisfied from the record here that the term "mixer circuit" in the count would apply to the portions of a picture tube to which those signals are applied. Certainly the examiner and the Board did not so regard it.

Appellants also argue that, had Loughlin believed the "tri-color picture reproducing tube" to be an immaterial limitation, he could have sought to place in issue a broader count lacking the immaterial limitation as provided for by Rule 205(a) of the Rules of Practice of the Patent Office. He could have, but elected to stand on the count as drawn and, since we have concluded that it was not a limitation of the count, no more need be said.

The court has been faced with the present problem before in certain cases cited in Kropa v. Robie et al., supra. Perhaps the most pertinent of those is Deutsch et al. v. Ball, 77 F.2d 930, 22 CCPA 1322. There the opening clause of the count specified, "A collapsible top for vehicle bodies *of the cabriolet or convertible coupé type* including * * *." The court recognized that the vehicle body of the appellants' disclosure was not of that type. The court found, however, that the count otherwise read clearly on the disclosure and that there was nothing in the structural elements recited that was more appropriate to a cabriolet than to any other kind of automobile. The conclusion of the majority of the court was that the words in question did not amount to a limitation of the claim even though it approved the proposition that "for interference purposes all expressly defined limitations in counts must be regarded as material and cannot be ignored."

In summary, we are convinced that the invention of the present count is wholly independent of its being used in connection with a tri-color picture reproducing tube or some other means of reproducing a color picture. There is no reference in the body of the count to the tube and, as the board concluded, the introductory clause is not needed to give "life, meaning and vitality" to the self-contained description of circuitry recited in the body of the count. Under the circumstances here, we are satisfied that the board did not err in ruling that Loughlin has support for the count.

The remaining issue is whether the board was correct in declining to review the reissue question on the ground that it relates to patentability and is not ancillary to priority. As authority, the Board cited Loukomsky v. Gerlich, 264 F.2d 907, 46 CCPA 805.

Appellants do not deny that the *Loukomsky* case is direct authority for the Board's holding that the reissue question raised here involves a matter of patentability that is not ancillary to priority. They also appear to concede that the same principle is applied or discussed in some five earlier decisions of this court.[2]

No decision holding to the contrary, more recent than the above, is cited by appellants. They rely, however, on an earlier decision which they regard as holding that a similar reissue question was reviewable by the court, Morgan v. Drake et al., 36 F.2d 511, 17 CCPA 729, and urge that the above-cited later decisions of the court give no compelling reasons for departing from that practice. That argument is, to say the least, unusual and does not impress us.

We are not convinced that a proposition so firmly established by the decisions of this court should be overturned. Following the *Loukomsky* case, Pritchard et al. are not entitled to a claim which is supported by the prior disclosure of Loughlin, whether or not Lough-

2. Creed et al. v. Potts, 96 F.2d 317, 25 CCPA 1084; Haglund v. Potts, 109 F. 2d 816, 27 CCPA 981; Belden et al. v. Klingele, 112 F.2d 805, 27 CCPA 1232; McCabe et al. v. Scheele, 112 F. 2d 800, 27 CCPA 1265; Mantz v. Jackson, 140 F.2d 161, 31 CCPA 824.

lin is entitled to the same claim in a patent. We, therefore, find no error in the board's refusal to review the reissue question.

The decision of the board is affirmed.

Affirmed.