53 CCPA

**Dalton H. PRITCHARD and Alfred C. Schroeder, Appellants,**

**v.**

**Bernard D. LOUGHLIN, Appellee.**

**Patent Appeal No. 7610.**

United States Court of Customs and Patent Appeals.

June 9, 1966.

Rehearing Denied July 28, 1966.

See also Cust. & Pat.App., 360 F.2d 250.

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Chief

Judge WORLEY, pursuant to provisions of Section 294(d), Title 28, United States Code.

William H. Meagher, Princeton, N. J. (A. Russinoff, Princeton, N. J., of counsel), for appellants.

Edward Ruestow, Little Neck, N. Y. (Jesse C. Bowyer, Washington, D. C., of counsel), for appellee.

Before RICH, Acting Chief Judge, and MARTIN, SMITH, and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.*

ALMOND, Judge.

Dalton H. Pritchard and Alfred C. Schroeder, hereinafter Pritchard, appeal from the decision of the Board of Patent Interferences awarding priority as to the single count in Interference No. 93,058 to Bernard D. Loughlin, the senior party.

Pritchard is involved on application serial No. 300,855, filed July 25, 1952, assigned to Radio Corporation of America (RCA). Loughlin is involved through his application serial No. 619,912 for reissue of patent No. 2,728,813, granted on application serial No. 297,739, filed July 8, 1952. The latter application is a "division" of application serial No. 159,212 filed May 1, 1950, the benefit of the filing date of which was accorded Loughlin by the examiner.

The present interference was instituted as a result of Loughlin's motion to amend an earlier interference, No. 88,-624, involving the same Pritchard and Loughlin applications. This new interference apparently was instituted instead of adding the count to No. 88,624 because that interference included additional parties not involved on the present count.[1]

The count relates to color television receivers and reads:

1. In a color television receiver that is adapted to reproduce images in color in response to a subcarrier that is phase and amplitude modulated with color difference signals and a brightness signal, apparatus for extracting selected component color signals comprising in combination a first synchronous detector adapted to derive a first color difference signal, a second synchronous detector adapted to derive a second color difference signal, an adder coupled to receive the outputs of color difference signals supplied by said synchronous detectors, said adder being adapted to add said color difference signals in such relative portions as to derive a third color difference signal, and a plurality of combining circuits each being coupled to receive the brightness signal and a different one of said color difference signals derived respectively from the outputs of said synchronous detectors and said adder.

The record discloses that information for producing a color television picture is transmitted by a complex signal including two components which are pertinent here. In the first of these component signals, called the luminance or brightness signal, the values of the three primary colors, red, blue, and green, in the scene are combined in proportion to their contribution to the total luminance. That signal is representative of the brightness of the scene rather than its color and is capable of producing the conventional black and white picture in a black and white receiver. The other signal component includes information as to color values in the original scene with the brightness value subtracted therefrom.

In the receiver, there is obtained, in addition to the brightness signal, usually designated Y, color difference signals for each of the primary colors, which signals may be designated R–Y (red), B–Y (blue) and G–Y (green). In the present system, each color difference signal is

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Chief Judge WORLEY, pursuant to provisions of Section 294(d), Title 28, United States Code.

1. The board's decision in Interference No. 88,624 was appealed to this court in P.A. 7567, decided May 19, 1966, Pritchard v. Loughlin, 360 F.2d 250, 53 CCPA ——. We affirmed the board's holding in favor of Loughlin.

added to the brightness signal to provide the corresponding red (R), blue (B) and green (G) primary color signal, which color signal also includes brightness information for reproducing the color picture.

The circuitry of the count does not derive each of the three primary color difference signals separately from the received color signal. Instead, it separately derives only two color difference signals, such as the red and the blue, and obtains the third or green color difference signal by combining the first two in an "adder." [2] The count also recites a plurality of "combining circuits," each of which receives one of the three color difference signals and the brightness signal. Although not specified in the count, the outputs of the combining circuits are the color signals, R, B and G, respectively.

The first question before us is whether the Loughlin reissue application supports the count. Pritchard contends that Loughlin does not disclose two adders that successively perform the function of (1) adding R–Y and B–Y to obtain G–Y and (2) adding G–Y and Y to obtain G.[3] In the first place, Pritchard points out that Loughlin's drawing is·in the form of a block diagram which does not show specific circuits. Thus the various circuits making up the receiver are represented by blocks or boxes not disclosing the elements or connections therein but including designations of functions performed and lines drawn between the blocks to represent the electrical connections between the circuits represented thereby. Only three blocks representing adder or combining circuits are illustrated. Two of those are shown as receiving the Y signal and the R–Y and B–Y signals, respectively, to provide the R signal at the output of one and the B signal at the output of the other. The third adder circuit, which is designated as providing the G signal at its output, is shown as having three inputs. Those are (1) the Y signal, .(2) a signal representative of R–Y and (3) a signal representative of B–Y.

The board observed that the specification of the Loughlin divisional and reissue applications, which is the same in both, does not describe specific circuitry to be used in that block of the drawing, designated 65a, representing the adder circuit which provides the G signal output. It noted, however, that the expected operation is described, and quoted the following passage: [4]

> In addition to being representative of the primary colors red and blue, these signals include components which when properly combined develop a color difference signal G–Y representative of green in the reproduced image. The units 66a and 66b and the voltage divider 67 are effective to derive the latter components in proper proportion from the signals translated through the networks 29b and 29c *for combination in the adder circuit 65a to develop the color difference signal G̶–Y representative of the green of the image.* [Emphasis added by board.]

The board then stated:

> This passage, particularly the underlined portion, clearly indicates that it was expected that the circuitry within the box designated 65a would be such

---

2. Appellants explain in their brief that * * * two color-difference signals (each, in itself, representing and being expressible in terms of a particular combination of three primary color components) can be combined to produce a resultant set of primary color components which represents a color-difference signal different from the original two.

3. In the count, it is the "adder" that performs function (1) and one of the "plural-ity of combining circuits" that performs function (2).

4. In the drawings (not reproduced herein) 29b and 29c designate the networks which supply signals R–Y and B–Y, respectively, and 66a and 66b designate phase inverter units through which those signals are passed. The reference character 67 designates a voltage divider interposed between unit 66b and the adder circuit 65a.

as to develop a distinct G–Y signal before combining with the brightness or luminance signal as the count requires. Pritchard has objected that such broad statements do not constitute a teaching of the particular circuit required by the count. We do not find this argument persuasive. At the time the Loughlin parent case was filed, the worker of ordinary skill in the art was familiar with adder circuits and in our opinion would have had no difficulty in providing circuitry to derive the signals as described in the quoted portion of the Loughlin specification, and circuitry functioning to so derive those signals would necessarily satisfy the requirement of the count which has been questioned.

Pritchard argues that the passage quoted by the board "is concerned not with the internal functioning of the adder circuit 65a but with the requirements placed on 'units 66a and 66b and the voltage divider.'" Appellants further state that the requirements on the latter elements are the same irrespective of whether the adder 65a merely combines the three input signals to provide the output G or provides that output by a cascaded adder-combiner circuit which first adds R–Y and B–Y to obtain G–Y and then adds the latter to Y.

Those arguments do not satisfy us that the board's holding is in error. The disclosure in the quoted passage of the specification of combining the red and blue color difference signals derived from the networks 29b and 29c in the adder to develop the green color difference signal G–Y is plain, and it is clear that the additional input to the adder, the brightness signal Y, must be combined with G–Y to obtain the described output signal G. Moreover, Pritchard has advanced no sound reason for doubting the board's conclusion that one skilled in the art would have been able to provide the circuitry necessary to obtain that intended operation.

Pritchard also urges that, although the parent Loughlin application includes a block diagram drawing essentially identical with that in the divisional and reissue applications, it includes a "mathematical discussion" that makes no mention of a green color difference signal but refers to the G signal as being obtained by "combining the monochrome [brightness] signal with proper proportions of the signals $S_{29b}$ [red color difference signal] and $S_{29c}$ [blue color difference signal] in the unit 65a." However, that argument is not persuasive on the question of support for the count in the Loughlin divisional and reissue applications. While the description referred to does not specify that a distinct G–Y signal is formed for addition to the Y signal, it clearly does not preclude the operation described in the passage from those applications quoted by the board.

In a footnote in their brief, appellants intimate that the position that Loughlin can make the count is inconsistent with his having canceled, after a rejection for lack of supporting disclosure, certain claims which he had previously copied from a patent [5] in compliance with the examiner's requirement and with reservations. However, no inconsistency is involved because, as Loughlin points out, those canceled claims specified distinguishing features not involved in the count here.

For the foregoing reasons, we think the board correctly ruled that the count is supported by Loughlin's divisional and reissue applications.

Appellants additionally urge that, should we sustain the board's holding that the reissue application supports the count, then the award of priority and the order to show cause should be vacated and the case remanded for taking of testimony. Their position is that the board based its finding of support for the count

5. Farr patent No. 2,763,716 which was the source of the count in aforementioned interference No. 88,624.

in the involved Loughlin reissue application on material (the passage quoted hereinabove) which, although appearing in the divisional application that resulted in the Loughlin patent for which reissue is being sought and thus entitling Loughlin to the benefit of his filing date of July 8, 1952, does not appear in the parent application filed May 1, 1950. On that basis, appellants assert that Loughlin is not entitled to the latter filing date accorded him by the examiner and that, as a result of their preliminary statement asserting reduction to practice by a date intermediate May 1, 1950 and July 8, 1952, they should be permitted to take testimony to overcome the latter date.

This matter of reopening the interference for taking testimony was raised after the board's decision on priority in a request for reconsideration of said decision. The board denied the request, stating:

> This contention should have been raised in answer to the order to show cause and not in connection with a petition for reconsideration of a decision after final hearing or even in briefs for the final hearing. No showing has been presented as to why this matter was not raised in time so that times for taking testimony prior to final hearing could be set. We will not set such times at this late stage in the proceeding in the absence of a showing which would justify reopening the testimony period. * * *

It seems to be the view of Pritchard that the hearing before the board was merely a summary proceeding to determine whether Pritchard was properly put under order to show cause. We do not think that is correct. In the first place, the request of Pritchard in response to the order was that the case be "set down for final hearing" on "the matters previously raised in Pritchard and Schroeder's opposition to the Loughlin Motion to Amend, and formally repeated by reference in the foregoing motion to dissolve." One of those matters, and the only one remaining in issue, was that

"the Loughlin reissue application does not properly support the proposed count." That obviously is a matter which would have been determinative of priority if decided adversely to Loughlin. The record does not show that, prior to the board's determination of that question, Pritchard made any contention that the granting to Loughlin of the benefit of the May 1, 1950 filing date of his parent application was improper even if support for the count were found in his divisional and reissue applications.

In effect, Pritchard is saying that the final hearing they requested was really final as to questions which could result in an award of priority adverse to Loughlin but was only an interlocutory affair so far as a possible ruling adverse to them was concerned. That position is untenable. There is an obvious public interest in avoiding piecemeal prosecution of interference proceedings in order to prevent unnecessary postponement of the beginning of the running of the term of patent resulting from an application involved in the proceedings. That interest is exemplified in the present case where the Pritchard application was filed over thirteen years ago. While Loughlin's application is for a reissue and the expiration date of any patent issuing thereon is already determined by the issue date of the patent sought to be reissued, the hardship which unnecessary delay in interference may impose on a reissue applicant is also apparent. It thus seems clear that a final hearing requested by a party under order to show cause must be a final hearing in a real sense and not just as to a question raised against that party's opponent.

In the present case, a contention that Loughlin had incorrectly been granted the benefit of the filing date of his parent application even if the divisional and reissue applications do support the count, and that Pritchard should therefore be allowed to take testimony to overcome the date of the divisional application, was clearly a pertinent matter which ordinary prudence would dictate raising

in the request for final hearing.[6] The failure of Pritchard to raise such issue left the question of support for the count in Loughlin's reissue application as the only ancillary question to be considered by the board. The board decided that question favorably to Loughlin, and we have found no error in that decision.

Also, Pritchard seems to overlook the fact that the board did not hold that Loughlin is not entitled to the benefit of the filing date of his parent application. While it did not consider that question specifically, and properly so since it was not raised in the request for final hearing, the board did conclude that "Pritchard has not shown sufficient reason why priority should not be awarded against him in view of the fact that in his preliminary statement he has not alleged dates which would overcome the filing date of the party Loughlin." Thus the award of the benefit of the May 1, 1950 date of the parent application has not

been overturned and no basis exists for their taking priority testimony.

Since Loughlin is entitled on the record to the benefit of his May 1, 1950 filing date, and that benefit renders the question of taking testimony moot, little discussion of McGuire v. Hill, 1898 C.D. 134, 84 O.G. 983, is necessary. However, it is apparent that any implication that might possibly be gleaned from that decision that a request to take testimony for contingent consideration might have been refused is clearly overcome by a much stronger implication to the contrary in the much later and much more related case of Lorenian v. Winstead, 127 USPQ 501 (Bd. of Pat. Int'f., 1959). See also McCormick v. Malherbe, 116 F.2d 520, 28 CCPA 838.

For the foregoing reasons, we will not vacate the board's decision and remand the case as requested by Pritchard.

The decision is affirmed.

Affirmed.

6. We do not consider the fact that the Rules of Practice of the Patent Office do not specifically provide for a motion to deprive an opposing party of the benefit of the filing date of an earlier filed application excuses Pritchard from raising that question. The question would have been particularly pertinent and bears an obviously close analogy to a motion to shift the burden of proof.