28 C.C.P.A. (Patents)

## In re DERLETH.

## Patent Appeal No. 4423.

Court of Customs and Patent Appeals.
March 31, 1941.

Rehearing Denied June 9, 1941.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the examiner rejecting, upon various grounds hereinafter discussed, claims 1, 2, 4, 5, 7, 8, and 10 to 13, inclusive, of appellant's application for a patent.

Claims 1, 2 and 10 are typical of the rejected claims and read as follows:

1. A plastic mass containing hydrating cement, and fly ash.

2. A concrete comprising hydrating cement, aggregate, fly ash and water.

10. As a blended cement, a dry mixture of Portland cement and fly ash.

The references cited are:

Fels, 1,419,665, June 13, 1922.

Stodder, 1,785,053, December 16, 1930.

Askenasy, 1,886,933, November 8, 1932.

Peffer et al., 1,942,769, January 9, 1934.

Starke, (Br.), 23,541, 1912.

Interference No. 66,393.

As indicated by the claims above quoted, the alleged invention involves broadly a plastic mass containing cement and fly ash. The specification states that the fly ash is obtained from the combustion of powdered coal. Some of the claims include an aggregate, while others do not.

The patent to Askenasy, which was in interference with an earlier application of appellant, relates to a method of producing concrete capable of resisting sea water and other equivalent solutions, which consists of adding to cement coal dust ash obtained from the combustion of pulverulent coal.

In view of the conclusion we have reached upon one branch of the case, hereinafter stated, it is unnecessary to refer to the other references cited by the Board of Appeals.

Appellant's application states that it is a division of his copending application Serial No. 584,580, filed January 2, 1932. With respect to appellant's earlier application the examiner stated: "This application is a division of applicant's prior copending application, Serial No. 584,580, filed January 2, 1932. This specification, as amended, is a substantial duplicate of that of applicant's above mentioned copending application. Applicant's prior application is now involved in an interference (No. 66,-393) with patent No. 1,886,933 issued November 8, 1932 to one Askenasy. Claims 1 to 4, inclusive, of the said patent constitute

Lawrence C. Kingsland and Estill E. Ezell, both of St. Louis, Mo. (Edmund C. Rogers and Kingsland, Rogers & Ezell, all of St. Louis, Mo., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

the counts thereof. Both the Examiner of Interferences and the Board of Appeals held that applicant was not the first inventor of the subject matter. Applicant thereafter, on October 27, 1936, filed in the District Court of the United States for the District of Columbia Equity Suit No. 62,-796 against patentee Askenasy as defendant. This suit is apparently now pending. *It is believed that applicant is not entitled to the appealed claims in this application regardless of whether or not applicant is successful in winning priority in the above mentioned interference.*" (Italics ours.)

The counts in said interference No. 66,-393 are contained in the record before us. Counts 2 and 4 of the interference are illustrative of the subject matter there involved and read as follows:

"2. A method of producing concrete capable of resisting sea-water and other equivalent solutions, consisting in adding to cement produced in the usual manner the coal-dust-ash obtained from the combustion of pulverulent coal."

"4. A concrete capable of resisting sea-water and other equivalent solutions, consisting of cement of the usual kind and normal filling materials with the addition of coal-dust-ash derived from the combustion of pulverulent coal."

It will be observed that the only substantial difference between the counts involved in said interference and the claims before us is the limitation in the former of the concrete being resistant to sea water and other equivalent solutions.

The examiner, according to his statement, rejected the claims before us upon the ground that appellant was estopped from making the claims in the application before us because not brought forward in said interference proceeding, and held that the claims are not patentable over the counts of said interference. He did not reject the claims on prior art.

In rejecting the claims upon the ground of estoppel the examiner relied upon the case of In re Henderson, 50 App.D.C. 191, 269 F. 707.

The Board of Appeals in its decision affirming the decision of the examiner stated:

"The claims on appeal concern broadly a plastic mass containing high grade cement and fly ash. Certain claims introduce an aggregate. Other claims are specific to a Portland cement and pulverized cement clinker.

"The present application is a continuation-in-part of a prior application, No. 584,-580, which application was in interference with patent No. 1,886,933 to Askenasy. This interference was decided by this Board in favor of Askenasy, but the interference is still pending before the District of Columbia on appeal.

"We note during the interference, claims of the type now on appeal were held subject to rejection as unpatentable over the issues in the event of an award of priority adverse to applicant. We note, also, that these same claims stood rejected on the British patent to Starke, No. 23,541 of 1912. While there may be some doubt as to this later holding, yet there is no indication in the record of application No. 584,-580 of the allowance of these claims. Appellant copied claims of the Askenasy patent and requested an interference which interrupted the prosecution of the earlier application on the merits.

"In the present application which, as stated, is a continuation of the Derleth application in the interference, the claims presented on appeal were present in the Derleth earlier application during the interference, but were evidently under rejection and when the interference was set up, it was stated that these claims stood subject to the outcome of the interference.

"The examiner rejected the claims, after the interference, upon the ground of non-patentability to appellant. It is now urged that these claims are broader than the issue of the interference and there was evidence taken during the progress of the interference which would tend to show that Derleth was a prior inventor of such broad claims. It is also urged in accordance with the doctrine set forth in Ex parte Des-Rosiers, 17 U.S.P.Q. 272; Ex parte Johnson, 20 U.S.P.Q. 284; Walker v. Coe, 24 U.S.P.Q. 51; Ex parte Rodgers, 26 U.S.P.Q. 100, that appellant is not estopped to present claims broader than those in the Askenasy patent when such rejected claims were present in the application during the progress of the interference with the patent.

"The circumstances here presented are different, however, from those considered in the decisions above listed. The claims here presented stood rejected during the interference, both on art and on the ground that they did not patentably distinguish from the issue of the interference. The patentee, therefore, was not called upon to

copy claims of the breadth of those on appeal, held unpatentable. We are satisfied that the claims are unpatentable, especially in view of the British patent to Starke noted in the record in the earlier application in connection with claims of this character."

We have quoted thus at length from the decision of the board because appellant's first application is not in the record, nor does the record contain any office action upon the claims of his first application. This is, of course, the fault of appellant. We are therefore compelled to rely upon the statements contained in the decision of the board, as above quoted from, and in the recitals of the examiner, as to the nature of the first application, the claims made therein, and the office action with respect thereto. In re French, 89 F. 2d 662, 24 C.C.P.A., Patents, 1158; Ericson v. Shaff, 104 F.2d 626, 26 C.C.P.A., Patents, 1350.

Therefore we must accept as a fact that, as stated by the Board of Appeals, when the interference was set up it was stated "that these claims stood subject to the outcome of the interference," and had been held subject to rejection as unpatentable over the issues of the interference in the event of an award of priority adverse to appellant.

We understand by this language that, while there were certain grounds of rejection of the claims by the Primary Examiner, the rejection was not final, but the claims would be held subject to the outcome of the interference; that is to say, if appellant Derleth won the interference the claims would be further considered, but if Askenasy won the interference there would be no occasion to consider them in appellant's application.

Under these circumstances we think there was no duty upon the part of Askenasy to apply for a reissue of his patent and copy claims similar to those before us.

Appellant relies upon the cases of Ex parte Des Rosiers, 17 U.S.P.Q. 272; Ex parte Johnson, 20 U.S.P.Q. 284; Ex parte Rodgers, 26 U.S.P.Q. 100; Ex parte Rowland, 46 U.S.P.Q. 316 (all being decisions of the Board of Appeals of the United States Patent Office), and upon the case of Walker v. Coe, 24 U.S.P.Q. 51, a decision of the Supreme Court of the District of Columbia.

In none of these cases, however, does it appear that there was a holding during the interference proceedings, as in the case at bar, that the claims dominating the counts of the interference would be held subject to the outcome of the interference.

It seems to us that here is a clear case of estoppel in pais against appellant. Upon the record before us we must assume that he did not object to the holding that claims such as are here involved would be held subject to the outcome of the interference. The patentee Askenasy therefore had a right to rely upon this disposition of the matter and was not called upon, in order to protect his rights, to copy the rejected claims of appellant's application. The patentee may well have been satisfied with the claims in his patent, for he was assured that if he won the interference appellant could not secure broader claims dominating the claims of his patent.

That appellant had the same idea, that the claims here involved might be subject to the outcome of the interference, is indicated by the excerpt from the statement of the examiner as follows: "Applicant further contends that the decision in Interference No. 66–933 is not final and applicant may be awarded priority over Askenasy by the Court. However, it is thought that even if that does occur, applicant is not entitled to these broad claims in a separate application than that containing the claims copied from the Askenasy patent. It is not seen that there is any difference between the two groups of claims except that of breadth, and breadth of claims is not in itself a patentable distinction, and applicant has not shown wherein it is a patentable distinction here."

It is stated in appellant's brief that the suit in equity growing out of said interference, begun by appellant under Sec. 4915, R.S., 35 U.S.C.A. § 63, was dismissed by the Supreme Court of the District of Columbia on February 16, 1939, and no appeal was taken from such dismissal. Therefore, the decision of the Board of Appeals in said interference, rendered on April 30, 1936, became final. It was not until October 26, 1936, that appellant's application now before us was filed, or nearly six months after he had received an adverse decision by the Board of Appeals in the interference.

Of course, the patentee Askenasy presumably had no knowledge of appellant's instant application until after the time in which he might apply for a reissue of his patent and copy the claims of appellant's

instant application had expired. It was only after he had lost the interference before the Board of Appeals that appellant filed the application before us. Presumably, had he won that interference, the instant application would never have been filed.

Thus it seems to us that, upon the record before us, appellant is equitably estopped from claiming the broad invention embraced in the claims at bar. See In re Henderson, supra.

In passing, we would observe that it is not plain to us, from the record before us, upon what theory appellant was entitled to file the application before us. It would seem, under rule 106 of the Rules of the Patent Office, and the uniform holdings of the Patent Office tribunals that the claims here involved do not patentably distinguish from the issue of the interference, that appellant was not entitled to file his instant application. The record shows that the examiner stated that, even though appellant might ultimately win the interference, he was not entitled to the claims here involved in a "separate application than that containing the claims copied from the Askenasy patent."

The Board of Appeals did not discuss this phase of the matter, and while it seems that the examiner was correct in his view, we do not find it necessary to base our conclusion as to the disposition of the appeal upon this point.

■ We are convinced that there is, so far as appears from the record before us, no patentable distinction between the counts in the interference and the claims before us. The counts of the interference are, at best, merely more limited in scope than the claims before us, in that the counts require that the composition claimed must be resistant to sea water. In neither the patent to Askenasy nor in appellant's application are any critical proportions disclosed necessary to make the concrete resistant to sea water.

In appellant's instant application the following statement appears: " * * * Concrete made with fly ash as a workability admixture may be used advantageously in making concrete subject to sea water, alkali water, or other aggressive water, or where placed in moist or wet situations. * * *"

In the decision of the Board of Appeals in the interference proceeding it is stated: "Appellant urges that the effect of ashes on cement and their tendency to produce a cement which would resist sea water had been known from the time of the Romans. The material referred to as used by the Romans and also in Germany, Holland and Belgium was a cement containing volcanic ash and not a product derived from the combustion of powdered coal. * * *"

In awarding priority to the patentee Askenasy the board held that appellant here had not established a reduction to practice of concrete resistant to sea water in accordance with the counts, and that it had not been established that all cement so produced is inherently resistant to sea water. It did hold that the material used by appellant in making the tests relied upon for reduction to practice was within the terms of the counts. Had not appellant, by not objecting to the holding when the interference was declared that claims such as are here before us would await the outcome of the interference, relieved the patentee from applying for a reissue of his patent and copying such broad claims from appellant's earlier application, the question of priority of invention of the broad claims before us might have been determined, and appellant might have been awarded priority of invention with respect to such claims. But, as hereinbefore stated, we think the doctrine of estoppel in pais is here applicable, and the decision of the Board of Appeals affirming the decision of the examiner upon this point must be affirmed.

In view of our conclusion upon the question of estoppel, it is unnecessary to consider that part of the decision of the Board of Appeals finding the claims unpatentable over the cited prior art.

For the reasons herein stated, the decision of the Board of Appeals affirming the decision of the examiner rejecting the claims is affirmed.

Affirmed.