59 CCPA

**Application of Dalton H. PRITCHARD and Alfred C. Schroeder.**

**Patent Appeal No. 8665.**

United States Court of Customs and Patent Appeals.

Aug. 17, 1972.

Rehearing Denied Oct. 19, 1972.

William H. Meagher, Princeton, N. J., Roland A. Linger, Arlington, Va., attys. of record, for appellants.

S. Wm. Cochran, Washington, D. C., for Comm'r of Patents; Jere W. Sears, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN and LANE, Judges, and ROSENSTEIN, Judge, United States Customs Court, sitting by designation.

LANE, Judge.

This is an appeal from that portion of the decision of the Patent Office Board of Appeals affirming the rejection of claims 6, 11 and 19 of application Serial

No. 300,855, filed July 25, 1952, entitled "Color Television." No appeal was taken from the board's affirmance of the examiner's rejection of other claims, and the examiner allowed certain claims. We affirm the board as to claims 6 and 11 and reverse with respect to claim 19.

## PRIOR PROCEEDINGS

The twenty-year history of the application involved in this appeal was marked with four interferences, two of which reached this court. Particularly relevant to the present appeal for reasons which will become apparent later is the opinion in Pritchard v. Loughlin (hereinafter *Pritchard*),[1] 361 F.2d 483, 53 CCPA 1344 (1966). That interference involved the present application and a Loughlin application[2] for reissue of Patent No. 2,728,813 (hereinafter the '813 patent). The '813 patent issued December 27, 1955, on application Serial No. 297,739 (hereinafter the '739 application) filed July 8, 1952, and designated a division of application Serial No. 159,212 (hereinafter the '212 application) filed May 1, 1950.[3] The '212 application itself matured into Loughlin Patent No. 2,773,929 (hereinafter the '929 patent) on December 11, 1956.

In *Pritchard*, this court affirmed the decision of the Board of Patent Interferences awarding priority of invention of the sole count in issue to Loughlin. We held that the board correctly rejected a charge by appellants that the count was not supported by the disclosure of the involved Loughlin reissue application, which was apparently identical to the disclosure of the '813 patent and the '739 application.

In addition to alleging error in holding the count to have been supported by the Loughlin application, appellants urged in *Pritchard* that the board improperly denied their request to reopen the interference to permit them to prove actual reduction to practice. It appears that subsequent to the board's decision awarding priority to Loughlin, appellants moved to reopen the interference so as to enable them to prove that they actually reduced the invention to practice in the interim between May 1, 1950, filing date of Loughlin's parent '212 application and the July 8, 1952, filing date of the divisional '739 application on which the '813 patent issued. Appellants contended that even if the '739 application, the '813 patent, and the involved reissue application supported the count, the disclosure of the '212 application did not provide adequate support. In effect, appellants alleged that new matter relative to the '212 application was included in the '739 application. Appellants' rationale, therefore, was that if they could prove actual reduction to practice prior to the filing date of the '739 application, the earliest date to which they believed Loughlin was entitled for the subject matter of the count, they would be entitled to the award of priority. The board did not reach the merits of appellants' argument. It held that appellants' request was untimely made. An order to show cause why judgment should not be rendered against them had been issued to appellants, final hearing had been held, and the board's decision had followed. Appellants' request was first made subsequent to the board's decision. This court held that the board was correct in denying appellants' request, and Judge Almond, writing for the court, stated:

It seems to be the view of Pritchard that the hearing before the board was merely a summary proceeding to de-

---

1. In another interference this court affirmed the award of priority to Loughlin of a count directed to a somewhat different aspect of the common invention than that to which the count in *Pritchard* was drawn. See Pritchard v. Loughlin, 360 F.2d 250, 53 CCPA 1339 (1966).

2. Serial No. 619,912 filed November 1, 1956.

3. On its face, the printed '813 patent states:
   Original application May 1, 1950, Serial No. 159,212. Divided and this application July 8, 1952, Serial No. 297,739.

termine whether Pritchard was properly put under order to show cause. We do not think that is correct. * * *

In effect, Pritchard is saying that the final hearing they requested was really final as to questions which could result in an award of priority adverse to Loughlin [questions relating to support for the count in the '739 application, the '813 patent, and the reissue application] but was only an interlocutory affair as far as a possible ruling adverse to them was concerned [ruling as to whether or not they should have been placed under the show cause order]. That position is untenable. There is an obvious public interest in avoiding piecemeal prosecution of interference proceedings in order to prevent unnecessary postponement of the beginning of the running of the term of patent resulting from an application involved in the proceedings. That interest is exemplified in the present case where the Pritchard application was filed over thirteen years ago. * * *

It thus seems clear that a final hearing requested by a party [Pritchard] under order to show cause must be a final hearing in a real sense and not just as to a question [support for the count in the '739 application, the '813 patent, and the reissue application] raised against that party's opponent [Loughlin].

Another of the interferences pertinent here was one involving appellants' application and a patent to Farr [4] from which claims, including one corresponding verbatim to claim 19 on appeal here, were copied. The interference was terminated when the primary examiner granted Farr's motion to dissolve on the ground that appellants' application did not support the counts.

Following the termination of all the interferences, ex parte examination of the present application was resumed in 1967 with the examiner's final rejection of, inter alia, the claims here on appeal. The rejection of each of the appealed claims was sustained by the board, and this appeal followed.

THE INVENTION

The invention relates to circuitry for a color television receiver. The record reveals that the information for reproducing an image on a color television set is transmitted by a complex signal which includes two video components—a brightness signal and a color carrier signal. The brightness signal, alternatively referred to as the luminance or monochrome signal, is provided by combining signals representative of three primary colors (such as red, blue and green) in the image to be reproduced in proportion to the contribution of each color to the total brightness. While the monochrome signal is representative of the brightness of the image rather than its color content, the signal may be expressed by a mathematical formula which equates brightness with the sum of the proportional contributions of the constituent primary colors.

The color carrier signal is a phase and amplitude modulated carrier from which information as to the color values in the image with the brightness signal subtracted therefrom may be directly derived. Circuitry in the color receiver provides, in addition to the brightness signal, frequently designated "Y," color difference signals for each of the primary colors. Using the symbols "R," "B," and "G" to represent the red, blue and green color signals respectively, the color difference signals may be designated "R–Y," "B–Y," and "G–Y" respectively. By combining each color difference signal with the brightness signal, i. e., electronically adding Y to R–Y, B–Y, and G–Y, the individual color signals, R, B, and G, may be obtained and applied to the color picture tube.

In appellants' circuitry, only two of the color difference signals, such as the red color difference signal (R–Y) and

4. Patent No. 2,763,716, issued September 18, 1956, on an application filed September 4, 1953.

the blue color difference signal (B–Y), are derived directly from the color carrier. The third, i. e., green, color difference signal (G–Y) is obtained by combining the first two in an "adding circuit." This is possible because, as noted above, the brightness signal, Y, is mathematically related to the green color signal, G. In other words, G being a component of Y, it is possible to extract a signal G–Y from the signals R–Y and B–Y. Suffice to say that each of the appealed claims relates to circuitry which utilizes two directly derived color difference signals to generate the third color difference signal.

The three claims on appeal, with paragraphing ours, read as follows:

6. In a color television receiver adapted to receive a composite signal including a brightness signal and a subcarrier, and wherein a given phase of said subcarrier represents a first color difference signal having a brightness component and a color component, and a quadrature phase of said subcarrier represents a second color difference signal also having a brightness component and a color component,

apparatus for extracting selected component color signals from said composite signal, comprising in combination:

a first synchronous detector adapted to heterodyne said subcarrier with waves of subcarrier frequency and said given phase so as to recover said first color difference signal;

a second synchronous detector adapted to heterodyne said subcarrier with waves of subcarrier frequency and said quadrature phase so as to recover said second color difference signal; means for combining said first and second color difference signals so as to provide a third color difference signal;

a plurality of combining circuits, each being coupled so as to receive a different one of said color difference signals; and

means for coupling said brightness signal to each of said combining circuits in such polarity that the brightness component of the color difference signal is cancelled.

11. In a color television receiver adapted to receive a composite signal including a subcarrier wave modulated in phase in accordance with a plurality of color difference signals, the combination including:

individual means for synchronously demodulating said subcarrier wave to separately derive two color difference signals from said composite signal;

a signal-adding network including two resistors; and means for impressing said two derived color representative signals respectively upon said two resistors, said resistors being connected together to a common terminal at which to develop a third color difference signal; and

first, second and third signal utilization means of similar configuration for utilizing respectively different ones of said three color difference signals.

19. In color television receiver apparatus adapted for the reproduction of a televised picture from a composite color signal including a monochrome signal and a color subcarrier, the combination of

a monochrome signal source,

a first color difference signal source,

a second color difference signal source,

a first mixer circuit comprising a first dualtriode electron discharge device having a pair of anodes, a pair of cathodes and a first and second control grid,

a second mixer circuit comprising a second dual-triode electron discharge device having a pair of anodes, a pair of cathodes and a first and second control grid,

a third mixer circuit comprising a third dual-triode electron discharge device having a pair of anodes, a pair

of cathodes and a pair of control grids,

said monochrome signal source being connected to one of the control grids of each of the first and second dual-triode electron discharge devices, with the first color difference signal source connected to the other control grid of the first dual-triode electron discharge device, and with the second color difference signal source connected to the other control grid of the second dual-triode electron discharge device.

## THE REJECTIONS

The examiner finally rejected claims 6 and 11 under 35 U.S.C. § 102 as unpatentable over both the count of the *Pritchard* interference and the disclosure of the Loughlin '813 patent. Claim 19 was rejected under 35 U.S.C. § 112 on the ground that it lacked support in appellants' specification.

In his answer following appeal by appellants to the board, the examiner advanced a new rejection of claim 11 as unpatentable under 35 U.S.C. § 103 over Loughlin in view of an excerpt from a textbook published by Cruft Electronics Staff (hereinafter Cruft).[5] Under the provisions of Rule 193(b),[6] appellants filed amendments to claim 11 and submitted an affidavit under Rule 131 purporting to prove actual reduction to practice during the fall of 1951 in the interim between the 1952 filing date of Loughlin's '739 application on which the '813 patent issued and the 1950 filing date of Loughlin's parent '212 application. Appellants charged that new matter relative to the '212 application was included in the '739 application and that the effective date of the '813 patent could not, therefore, be the '212 application filing date. It will be recalled that this is what appellants sought to do in

the *Pritchard* interference when they requested reopening the interference.

On receipt of the papers filed by appellants under Rule 193(b), the board remanded the case to the examiner for his consideration. He entered the amendments to claim 11 but adhered to the rejection. The examiner refused to consider the affidavit with respect to claim 11 because of this court's decision in the *Pritchard* interference. Moreover, the examiner regarded the submission of the affidavit as untimely, citing Rule 195 which requires a showing of good and sufficient reason for the filing of an affidavit subsequent to the taking of an appeal to the board.

Appellants petitioned the Commissioner for relief from the examiner's action. The Group Director, acting for the Commissioner, sustained the examiner and held that the affidavit was "not enterable at this late date in the prosecution." The Group Director felt that the filing of the affidavit was untimely particularly because appellants had known of the Loughlin disclosure for an appreciable time. Moreover, he held that "even if timely filed the affidavit could hardly prevail in view of the interference record with Loughlin."

## THE DECISION OF THE BOARD

The board stated the following with respect to claim 6:

Claim 6 stands rejected as (1) unpatentable over the count of [the *Pritchard*] [i]nterference, and (2) as unpatentable over the disclosure of [the '813 patent] or its parent [the '929 patent which issued on the '212 application].

We * * * are in accord with the position of the Examiner.

It was noted in our review of the decision[s] of the * * * [board

---

5. Electronics Circuits and Tubes, Cruft Electronics Staff, McGraw-Hill Book Co., Inc., New York (1st ed. 1947), page 838.

6. Rule 193(b) reads in relevant portion as follows:

[I]f the examiner's answer states a new ground of rejection appellant may file a reply thereto * * *; such reply may include any amendment or material appropriate to the new ground.

and the Court of Customs and Patent Appeals in the *Pritchard* interference] that neither of these tribunals denied Loughlin right to the benefit of the filing date of his ['929] patent. * * * [W]e are restricted in our review of the present case by both decisions. Accordingly, we accept the filing date of [the '929 patent, i. e., May 1, 1950,] as the effective date [of Loughlin] for consideration of the subject matter of claim 6 under 35 U.S.C. §§ 102 or 103.

After evaluating the Loughlin disclosure and the Cruft publication, the board concluded that "claim 6 involves at best only an obvious modification of the prior art and we will sustain the rejection of this claim under 35 U.S.C. § 103." Also with respect to claim 6, the board held "that the count [in the *Pritchard* interference] * * * involve[s] the same structure although this structure is defined in broader terms in the claim [on appeal]," and accordingly held appellant to be barred by estoppel from presenting that claim, citing In re Risse, 378 F.2d 948, 54 CCPA 1495 (1967).

With respect to claim 11, the board stated:

[It] stands rejected as unpatentable over Loughlin taken with the Cruft publication.

In our opinion this claim involves only an obvious modification of the prior art for the reasons stated in the forepart of this decision relative to claim 6.

Accordingly, we will sustain the rejection of this claim.

In affirming the examiner's rejection of claim 19 under 35 U.S.C. § 112, the board agreed that the claim was not supported by the disclosure in the specification as to the recitation of the "mixer" circuits.

Appellants sought reconsideration of the board's decision urging, among other things, that the board made a new rejection of claim 6 under 35 U.S.C. § 103 and that interference estoppel does not apply under the facts of this case. However, the board adhered to its decision.

## OPINION

### Claims 6 and 11

█ We think the examiner and the board properly refused to consider appellants' contention that the Loughlin '739 application contains new matter. Having failed to timely raise this question in the *Pritchard* interference, appellants are collaterally estopped to now raise it ex parte. This position is not based on the doctrine of interference estoppel by which restrictions are imposed on the submission of claims ex parte which should have been presented as counts in a previous interference. See In re Risse, supra. The holding is, instead, an application of more general principles of collateral estoppel wherein a judgment previously rendered bars consideration of questions of fact or mixed questions of fact and law which were, or should have been, resolved in the earlier litigation. See Yates v. United States, 354 U.S. 298, 335–338, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957); Partmar Corp. v. Paramount Pictures Theatres Corp., 347 U.S. 89, 90–91, 74 S.Ct. 414, 98 L.Ed. 532 (1954); Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 597–602, 68 S.Ct. 715, 92 L.Ed. 898 (1948). An estoppel of this sort is invoked for various reasons of judicial and public policy. To prevent repetitious litigation, to avoid inconsistent holdings which lead to further litigation, to give sanctity and finality to a judgment, and to generally insure the orderly and complete resolution of disputes are among the interests involved. See generally 46 Am.Jur.2d, Judgments, §§ 394–95, 401–02.

██ When the parties to the several litigations are different, estoppels are less favored. However, an ex parte post-interference proceeding in which the prior invention of the party which prevailed in the interference is interposed by the Patent Office as a bar to

claims presented by the losing party bears such a close relationship to the interference proceeding itself that an estoppel as to questions that were, or should have been, answered in the priority contest is properly applied in appropriate circumstances. Interference estoppel is a clear example. The application of the principle of collateral estoppel is appropriate in the present case since the issue sought to be raised by appellants here involves priority of invention and was directly related to the issue litigated in the interference.

We appreciate that appellants perceive significance in the fact that in the *Pritchard* interference the merits of the new matter question were never reached. Apparently, appellants would have no quarrel with the board had this court previously held that there was no new matter in the Loughlin '739 application. However, the court's affirmance of the board's refusal to consider the issue in *Pritchard* for the reasons explained above had the same legal effect as to appellants as a holding of no new matter. We accordingly hold that appellants are estopped from raising the issue of new matter in Loughlin's disclosure, and since the relevance of the Rule 131 affidavit depends initially on whether or not new matter was included in the '739 application, our conclusion precludes any need to consider the merits of the Rule 131 showing. Further review of the board's decision begins with the assumption that all that Loughlin discloses is effective as of the 1950 filing date of the '212 application.

■ Appellants contend that the board made a new rejection of claim 6 under 35 U.S.C. § 103 without affording an opportunity for appellants to respond thereto as provided for under Rule 196(b). We agree. However, we do not agree that, in so doing, the board implicitly reversed the examiner's § 102 rejection. As seen from its opinion, particularly the portion of it which is reproduced above, the board recognized that the examiner had made a rejection based on 35 U.S.C. § 102 when it stated that it was "in accord" with the examiner's position. Moreover, in saying that claim 6 was "at best" obvious, the board was not necessarily overruling the examiner's conclusion of anticipation. We are satisfied that a reasonable reading of the board's opinion fails to support appellants' contention that the examiner's § 102 rejection was "left an empty shell," and we regard that rejection as before us. See In re Ludtke, 441 F.2d 660, 58 CCPA 1159 (1971).

We do not understand that the appellants seriously challenge the conclusions that the '813 Loughlin patent anticipates claim 6 and renders obvious claim 11 except to the extent that they urge that the portions of the Loughlin disclosure which would support those conclusions amounted to new matter and therefore are not prior art as to the claims on appeal. Since appellants may not assert that those portions constitute new matter for the reasons stated, their principal argument is disposed of.

The Loughlin '813 patent discloses that the green color signal is obtained in two steps. The red and blue color difference signals derived from the color carrier are first combined to obtain the green color difference signal. The green, red and blue color difference signals are combined with the brightness signal to produce the respective color signals. While the patent shows the combining circuitry in block diagram form without identifying the particular components used, this court held in *Pritchard* that appellants had "advanced no sound reason for doubting the * * * conclusion [of the Board of Patent Interferences] that one skilled in the art would be able to provide the circuitry necessary to obtain * * * [the] intended operation." 361 F.2d at 486, 53 CCPA at 1348. Although they admit that this issue had been decided adverse to them in the interference, appellants nevertheless question the adequacy of the Loughlin '813 disclosure as an anticipation of claim 6. We consider the finding in *Pritchard* with respect to the Loughlin disclosure to be controlling

here. Claim 6 defines the combining circuitry only in terms of function, and we agree with the examiner and the board that it is anticipated by the '813 patent. This disposition of the appeal with respect to claim 6 renders unnecessary any consideration of the alternative position of the Patent Office based on interference estoppel.

■ Claim 11 differs from claim 6 in that resistor-type combining circuitry is recited. We agree with the examiner and the board that Cruft provides an obvious suggestion of the use of resistors in the combining circuits of the '813 patent, and we affirm the rejection of this claim under 35 U.S.C. § 103.

### Claim 19

■ Consideration of claim 19 requires a brief analysis of the circuitry that appellants disclose for adding or mixing the individual color difference signals and the monochrome (brightness) signal. A dual triode is provided for each primary color with the monochrome signal applied to the control grid of the left side, or left triode, of each dual triode. Each respective color difference signal is coupled to the grid of the right side of the dual triode with a connection to a resistor common to the cathode circuitry of the two sides and is applied through cathode coupling to the cathode of the left side. The resulting color signal appears on the anode of the left side. A signal representing the color difference signal in inverted form is provided at the anode of the right side of the dual triodes associated with the two color difference signals which are derived directly from the color carrier.

The issue is whether the circuitry appellants disclose complies with recitations in claim 19 of first and second "mixer" circuits as each "comprising a * * * dual-triode electron discharge device having a pair of anodes, a pair of cathodes and a first and second control grid," and the similar definition of the third mixer circuit. The 1960 decision

granting the motion to dissolve the interference between appellants and the patentee Farr,[7] relied upon by the examiner, held appellant's application not to disclose mixer circuits comprising dual triodes because "the mixer function throughout the * * * application has been ascribed solely to the left side of the dual triode." In agreeing here, the Board of Appeals emphasized that the right sides of the first two dual triodes operate as inverters for the signals impressed on the corresponding control grids and held that the inverters are not part of the "mixers."

We think that the specification adequately supports the broad terminology of claim 19. Appellants disclose the use of circuits which contain dual triodes and which mix the respective color difference signals with the monochrome signal. That disclosure responds to the claim language, "a * * * mixer circuit comprising a * * * dual-triode electron discharge device * * *."

We note that each circuit employs a dual triode, and the signals to be mixed are applied to the respective control grids of the two sides of the dual triode. In this sense, both sides may be considered to perform a role in achieving the mixing action. However, even if the board is correct in assuming that no mixing action takes place on the right side, we still conclude that the recitations in the claim are supported by the disclosure. We agree with appellant that:

> whether "mixing action" takes place in the left or right sides of the illustrated dual-triodes * * * is clearly irrelevant to the issue of support for * * * claim 19 * * * [which] requires only that the mixer circuits include dual triodes * * * [and which] is unconcerned with the situs of "mixing action" within the respective mixer circuits.

On the present record, no ambiguity is seen in the claim terminology, and it therefore is not significant that the

---

7. See text accompanying footnote 4 supra.

Farr patent in which the claim originated disclosed different circuitry. The rejection of claim 19 is reversed.

The decision of the board is affirmed as to claims 6 and 11 and reversed as to claim 19.

Modified.

59 CCPA