In re Charles H. **KROEKEL** and Frederick A. **Pfaff.**

Appeal No. 86–721.

United States Court of Appeals, Federal Circuit.

Oct. 14, 1986.

Michael B. Fein, Rohm and Haas Co., Philadelphia, Pa., argued for appellants. With him on the brief was Carl W. Battle. Also on the brief was Rudolf E. Hutz, Connolly, Bove, Lodge & Hutz, Wilmington, Del.

Richard E. Schafer, Associate Sol., Arlington, Va., argued for appellee. With him on the brief were Joseph F. Nakamura, Sol. and Fred E. McKelvey.

Before MARKEY, Chief Judge, BENNETT, Senior Circuit Judge, and SMITH, Circuit Judge.

MARKEY, Chief Judge.

Kroekel and Pfaff (Kroekel) appeal from a decision of the United States Patent and Trademark Office (PTO) Board of Patent Appeals and Interferences (board), affirming the examiner's final rejection of claims 1, 3–12, 14–22, 24–40, 42, and 43 in application Serial No. 770,085 under 35 U.S.C. § 102(g) and interference estoppel. 230 USPQ 191 (1985). We affirm the rejection on the grounds of interference estoppel.

*Background*

On October 23, 1968, Kroekel filed an application, assigned to Rohm and Haas Company, entitled "Unsaturated Polymer Resin Molding Compositions". One of our predecessor courts, the U.S. Court of Customs and Patent Appeals, reversed a decision of the former Patent Office Board of Appeals rejecting Kroekel's application under 35 U.S.C. § 112, second paragraph. *In re Kroekel*, 504 F.2d 1143, 183 USPQ 610 (CCPA 1974). On February 12, 1975, the examiner suggested that Kroekel add two claims and provoke an interference with an application filed by Lowell R. Comstock and Percy L. Smith (Comstock), assigned to Union Carbide Corporation. The Comstock application, Serial No. 336,120, filed February 26, 1973, was accorded the benefit of application Serial No. 107,514, filed January 18, 1971, and application Serial No. 72,798, filed September 16, 1970, now U.S. Patent No. 3,718,714, issued February 27, 1973. Kroekel added the suggested claims as claims 40 and 41.

In an August 6, 1975 notice, the patent interference examiner declared interference No. 99,090. The sole issue of the interference was defined by phantom count 1, which corresponded to Comstock's claim 36 and Kroekel's claim 40:

A composition comprising:
(a) an unsaturated polyester which is the condensation product of at least one ethylenically unsaturated dicarboxylic acid with at least one dihydric alcohol,
(b) an ethylenically unsaturated monomer, and
(c) 0.99 to 37.5% of an interpolymer comprising a vinyl ester of an aliphatic saturated monocarboxylic acid and ethylenically unsaturated carboxylic acid.

The notice of interference stated that "[c]laims 1, 3–28 and 41 will be held subject to rejection as unpatentable over the issue

in the event of an award of priority adverse to [Kroekel]."

During the motion period, Kroekel moved to substitute a narrower phantom count 2, in which the carboxyl content of component (c) was limited to an amount "sufficient to provide a carboxyl group content of 0.1 to 5% by weight of the interpolymer." Alternatively, Kroekel moved to dissolve the interference on grounds of unpatentability under 35 U.S.C. § 112, contending that neither his application nor that of Comstock supported count 1 because that count was unlimited in the carboxyl content of the vinyl ester polymer.

On April 6, 1976, the primary examiner granted Kroekel's motion to "dissolve the interference," and "substituted" Kroekel's proposed count 2 for count 1. As did count 1, count 2 corresponded with claim 36 of Comstock and claim 40 of Kroekel. Kroekel never moved to substitute a broader count, believing that Comstock could not support a broader count. Comstock and Kroekel filed new preliminary statements in relation to new count 2. On August 25, 1976, the examiner "redeclared" the interference with the substituted count, continuing to style the interference as No. 99,090.

At the interference, Kroekel relied solely on his filing date, October 23, 1968. Comstock, as the junior party, sustained his burden of proving conception and reduction to practice before that date. Accordingly, the former Board of Patent Interferences awarded priority to Comstock. *Comstock v. Kroekel*, 212 USPQ 866 (Bd.Pat.Int. 1980). On September 8, 1981, U.S. Patent No. 4,288,571 issued to Comstock.

After the interference, Kroekel continued the *ex parte* prosecution of his application, cancelling claim 41 and amending claim 40, by adding a use description and broadening the definition of the polymer component (c). As a result of that amendment, claim 40 does not require the presence of a vinyl ester in that polymer. Thus the claim 40 that had corresponded to count 2 became the claim 40 of the post-interference, *ex parte* prosecution and the broadest claim in Kroekel's application. The parties have treated present claim 40 as "generic" and "dominating" with respect to the lost phantom count.* Though the limitations added might technically mean that present claim 40 does not dominate the phantom count, we accept the parties' characterization of claim 40, which is apparently based on the view that any added limitations are insignificant.

Claim 40 in its final amended form recites:

A composition for use with a chemical thickener in sheet molding compounds and bulk molding compounds which when molded and cured under heat and pressure in the presence of fibrous reinforcement yields an article having smooth surfaces comprising:

(a) 20 to 80 percent by weight of an unsaturated polyester which is the condensation product of at least one ethylenically unsaturated dicarboxylic acid with at least one dihydric alcohol,

(b) 20 to 80 percent by weight of an ethylenically unsaturated monomer, and

(c) 1 to 25 percent by weight of an acid functional thermoplastic addition polymer containing 0.1 to 5% by weight acid groups.

Seeking allowance of claim 40, Kroekel attempted under 37 C.F.R. § 1.131 to swear behind the established date of Comstock's actual reduction to practice of the subject matter of count 2.

The examiner rejected claims 1, 3–8, 12, 14–22, 25, 28–40, 42 and 43 under 35 U.S.C.

---

* In *In re Kaplan*, 789 F.2d 1574, 1577, 229 USPQ 678, 681 (Fed.Cir.1986), this court said:

By domination we refer, in accordance with established patent law terminology, to that phenomenon, which grows out of the fact that patents have claims, whereunder one patent has a broad or "generic" claim which "reads on" an invention defined by a narrower or more specific claim in another patent, the former "dominating" the latter because the more narrowly claimed invention cannot be practiced without infringing the broader claim.

§ 102(g) as being anticipated by count 2, "together with a portion of the disclosure of the winning party, Comstock et al. which is common to both applications." Apparently, the examiner did not realize that he cannot employ the lost count together with some of Comstock's disclosure in a rejection on § 102(g), as he can in a rejection on an interference estoppel. *In re Wilding*, 535 F.2d 631, 633 n. 2, 190 USPQ 59, 61 n. 2 (CCPA 1976); *In re Risse*, 378 F.2d 948, 958-59, 154 USPQ 1, 9-10 (CCPA 1967).

### The Board's Decision

The board noted that Kroekel agreed at oral hearing to assume that the examiner based his rejection of claim 40 on the "so-called 'lost count' doctrine; i.e., having lost a particular count in an interference proceeding, he is (1) *estopped* from claiming the subject matter of claim 40 and/or (2) *barred* from claiming that subject matter by 35 U.S.C. § 102(g)." 230 USPQ at 192.

Because Kroekel argued for patentability of generic claim 40 alone, the board considered that issue dispositive. 230 USPQ at 192. The board noted Kroekel's admission at the hearing that generic claim 40 necessarily includes the subject matter of the subgeneric lost count, i.e., that it is a dominating claim, and thus the lost count anticipates claim 40 "in the sense that a species disclosed in a reference generally anticipates a claimed genus." *Id.* at 194.

The board rejected Kroekel's Rule 131 affidavit because Rule 131 does not provide for swearing behind either a lost count or claimed anticipatory subject matter. The board noted that to allow a Rule 131 affidavit under the circumstances of this case would subvert the purposes of § 102(g) and interference practice.

Alternatively, the board sustained the rejection based on "estoppel by judgment or res judicata." The board noted the general rule that "a losing party in an interference proceeding *ordinarily* cannot be awarded claims broader than the interference issue and thus have claims which dominate the claims awarded to the successful party." 230 USPQ at 193 (emphasis in original)

(quoting *In re Long*, 83 F.2d 458, 459, 29 USPQ 357, 358 (CCPA 1936)). The board held that Kroekel should have moved during the interference proceeding to broaden the count and thereupon have presented his best proofs, rather than waiting to see whether Comstock's proofs would fail and then attempting to recoup his loss *ex parte* by submitting Rule 131 affidavits. The board noted that, if Kroekel were allowed his new claim, it would prevent finality in the prior interference and would probably necessitate another interference. 230 USPQ at 195.

Kroekel filed a request for reconsideration, arguing that claim 40 is not illustrative of all the claims, and thus the board should not have considered it dispositive. Kroekel said some claims do not dominate the lost count and had been treated differently from claim 40 during prosecution. The board concluded that Kroekel did not argue claims separately, denied the request for reconsideration, and reaffirmed its original decision.

On appeal, Kroekel argues that the board (1) improperly rejected claim 40 under § 102(g) because (a) he is entitled to swear behind Comstock and (b) claim 40 and the lost count are "patentably distinct"; and (2) improperly applied the doctrine of interference estoppel because (a) Comstock could not support Kroekel's dominating claim 40 and thus the subject matter of that claim could not have been raised in the interference; and (b) claim 40 and the lost count are "patentably distinct".

Because the board properly rejected claim 40 under the doctrine of interference estoppel, we affirm that rejection. We do not, therefore, address the rejection based on § 102(g) or the question of whether a phantom count can be used as prior art under § 102(g).

### Issue

Whether the board erred in sustaining the rejection under the doctrine of interference estoppel.

## OPINION

### Claim in Issue

■ On appeal before this court, Kroekel argues (improperly for the first time in his reply brief) as he did in requesting reconsideration, that claim 40 is not dispositive. He fails, however, to cite anything in the record, other than his request for reconsideration, which could possibly indicate that he separately argued before the board the allowability of claims other than claim 40, and the request for reconsideration contains no such indication. Therefore, because Kroekel has waived any argument he may have had with respect to claims other than claim 40, this court, as did the board, considers the patentability of claim 40 as dispositive.

### Interference Estoppel

■ Kroekel argues that the board erroneously invoked the doctrine of "interference estoppel" because the interference only adjudicated priority of the "species" which was common to both applications, and he "is no longer claiming that invention." Kroekel says he had no obligation to broaden the lost count because Comstock had no support in his application for the generic invention and a motion to broaden would therefore have been futile. Kroekel contends he should now be able to show, via Rule 131 affidavits, that he was in fact the first inventor of the generic invention.

The issue presented is whether Kroekel, having never attempted to include in the interference subject matter which dominates the lost count, may now successfully claim that subject matter.

The doctrine of interference estoppel is directed to finality of an interference, at least with respect to all issues which *might have been* presented in the interference. *See, e.g., In re Risse*, 378 F.2d 948, 955, 154 USPQ 1, 7 (CCPA 1967); *In re Yale*, 347 F.2d 995, 1001, 146 USPQ 400, 404 (CCPA 1965). For that reason, the board correctly rejected, as do we on this appeal, Kroekel's argument that Comstock had abandoned, suppressed, or concealed the subject matter of the lost count, holding that Kroekel should have raised that argument during the interference and not during the later *ex parte* proceedings. 230 USPQ at 194; *see In re Pritchard*, 463 F.2d 1359, 175 USPQ 17 (CCPA 1972).

Estoppel should be decided on the facts of each case with reference to principles of equity. Although the board labeled its application of interference estoppel as "estoppel by judgment or res judicata", labeling as in the dicta of *Woods v. Tsuchiya*, 754 F.2d 1571, 1579, 225 USPQ 11, 16 (Fed. Cir.), *cert. denied*, — U.S. —, 106 S.Ct. 81, 88 L.Ed.2d 67 (1985), is of little use in this case.

Kroekel attempts to support his statement that Comstock could not support the generic invention by noting that Comstock attempted to claim the genus in a rejected reissue application. The assertion is unpersuasive. It has never been determined whether Comstock could have supported the genus for interference purposes. That determination Kroekel made for himself, neglecting to note the difference between supporting a claim for patentability purposes and supporting a phantom count in an interference.

One of our predecessor courts has noted the critical distinction:

> The "count", as distinguished from a party's "claim", need not be patentable to either party in the sense of being fully supported by either party's disclosure. In fact, where the interference is conducted on a "phantom" count, as described in § 1101.02 of the Manual of Patent Examining Procedure (Third Ed.), or on the basis of a modified patent claim in accordance with 37 CFR 1.205(a), *at least one party, by definition, will not have full support for all the limitations of the count.*

*Squires v. Corbett*, 560 F.2d 424, 433, 194 USPQ 513, 519 (CCPA 1977) (emphasis supplied) (footnote omitted). "The purpose of the count is to determine what evidence is relevant to the issue of priority." *Case v. CPC International, Inc.*, 730 F.2d 745,

**710**

749, 221 USPQ 196, 199 (Fed.Cir.), *cert. denied*, 469 U.S. 872, 105 S.Ct. 223, 83 L.Ed.2d 152 (1984). The phantom count merely represents the inventive concept which may in some cases portray two mutually exclusive, but patentably indistinct, sets of claims. *Aelony v. Arni*, 547 F.2d 566, 570, 192 USPQ 486, 490 (CCPA 1977). The PTO never indicated to Kroekel that Comstock could not support the *phantom count* of the interference.

Therefore, Kroekel's contention that, because Comstock "could not support" the generic invention, that subject matter could not have been adjudicated in the interference, and a motion to broaden would have been futile, is without merit. If Kroekel *had* attempted to broaden the count and the PTO had prevented him from doing so, he would not be estopped from later claiming the broader subject matter. *In re Frilette*, 436 F.2d 496, 500, 168 USPQ 368, 371 (CCPA 1971); *see Stoudt v. Guggenheim*, 651 F.2d 760, 210 USPQ 359 (CCPA 1981). However, that would not eliminate the possibility of a rejection on another ground. Moreover, we reject Kroekel's argument that the PTO has the burden of amending the count he had suggested. *See* 37 C.F.R. 1.231(a)(2) (1975); *accord* Manual of Patent Examining Procedure (MPEP) § 1105.03 (1975).

If claim 40 were patentably distinct from the lost count, it could not be denied to Kroekel on the sole ground of interference estoppel. *In re Risse*, 378 F.2d at 957, 154 USPQ at 8; *see* MPEP § 1109.02. However, Kroekel has offered no plausible basis to support his contention that the subject matter represented by claim 40 is patentably distinct from the lost count. Indeed, Kroekel admitted at oral argument, as he did before the board, that, "if the species had been published more than one year before our genus, then it would anticipate."

In *In re Bandel*, 348 F.2d 563, 146 USPQ 389 (CCPA 1965), the court held that Bandel could not claim subject matter that dominated counts which he had lost in a prior interference, Bandel having been noti-

fied that similar subject matter would be subject to rejection over the counts if the priority award was adverse. *See also In re Derleth*, 118 F.2d 566, 49 USPQ 84 (CCPA 1941). Like Kroekel, Bandel failed to place broader subject matter in issue and to demonstrate that his best proofs corresponded to subject matter outside the scope of the counts. *Cf.* MPEP § 1101.02.

Attempting to distinguish *Bandel*, Kroekel says he believed the "redeclaration" of the interference superseded the original declaration and expunged the warning notice. Count 2, substituted at Kroekel's insistence, is identical to count 1 except for the specific percentage of carboxyl groups. The PTO never indicated abandonment of the warning notice. Asked at oral argument regarding the basis for believing the argument, Kroekel's counsel said he assumed that the warning notice was a "mistake".

The PTO could easily have eliminated any ambiguity by simply resending the warning notice when it "redeclared" the interference. Had the PTO expressly stated that it was withdrawing its warning, estoppel should not apply. However, under the circumstances presented, Kroekel should have inquired as to the status of the warning notice, particularly if he believed it was a mistake or that his claims were patentably distinct from the substituted count. *See In re Bandel*, 348 F.2d at 569, 146 USPQ at 394; *In re Derleth*, 118 F.2d at 569, 49 USPQ at 86.

Kroekel's attempt to distinguish *Bandel* because the claims rejected in *Bandel* were broader than the lost counts merely in the use of the word "comprising" is without merit. We are unable to discern why broadening via use of the word "comprising" is legally distinguishable here from broadening via use of a generic claim.

Claim 40 does not exclude the precise subject matter lost in the interference. To allow Kroekel that claim, via Rule 131 affidavits or otherwise, would be to permit an undeserving Kroekel to circumvent the adverse priority determination in the interference at the expense of the winning party,

Comstock. Comstock had a right to rely on Kroekel's inaction with respect to the warning notice and to rely on the interference adjudicating the basic rights of the parties. The orderly conduct of interference practice, with opportunity for finality and repose, precludes awarding claim 40 to Kroekel in this case.

### Conclusion

The board's rejection of claim 40 on the ground of interference estoppel was proper and is sustained.

AFFIRMED.

EDWARD S. SMITH, Circuit Judge, concurs in result.